made thereon that the assignee be made a party defendant, and that the summons and complaint and all proceedings in the action be amended accordingly. From this order plaintiff and his said assignee appeal.

Argued before VAN BRUNT, P. J., and LAWRENCE and DANIELS, JJ.

*Thos. J. Keigharn,* for appellant. *Amasa Richard Angell,* for respondent.

DANIELS, J. The plaintiff has brought this action to set aside an agreement made by him with the defendant for the loan of money, and to obtain a return of collaterals held by way of security for the loan, on the ground that it was made for a usurious rate, and reservation of interest. Two days after the action was begun the plaintiff made a general assignment for the benefit of his creditors, and soon afterwards the defendant made the motion resulting in this order. Its object was to substitute the assignee as plaintiff, but that was denied, and he was directed to be joined as a defendant. From that order both himself and the plaintiff have appealed. This action has been brought under a statute of this state authorizing the borrower of money at an unlawful rate of interest to maintain an action to annul the contract for the loan, and to recover money, goods, or things in action, received by the lender as security for the loan in violation of the act; and that action may be maintained by the borrower without the payment or the offer to pay any part of the principal or interest of the loan. 2 Rev. St. (6th Ed.) 1164, 1165. The right to maintain it has been specially restricted to the borrower. *Wheelock* v. *Lee,* 64 N. Y. 243. The controversy is wholly, therefore, between himself and the lender; and no other person can, as this action is presented by the pleadings, be either a necessary or proper party to it. To substitute the assignee for the borrower would at once have defeated the suit, and to add him as a defendant would be of not the least service to the defendant in the way of aiding him in his defense to it. The effect would be to delay its progress by requiring the complaint to be framed anew, and a further and useless attribute added to the action, which could be of no benefit to the plaintiff or the defendant. In this respect the case is within the principle followed in *Chapman* v. *Forbes,* 123 N. Y. 532, 26 N. E. Rep. 3. No beneficial result to any one can legally follow from the order, and, as both the assignee and the plaintiff object to it, the order should be reversed, with $10 costs and the disbursements, and the motion denied. All concur.

---

## CAMMERER *v.* MULLER.

*(Supreme Court, General Term, First Department. May 15, 1891.)*

1. BREACH OF MARRIAGE PROMISE—COMPETENCY OF PARTY—MARRIED MAN.

An action may be maintained upon a married man's breach of contract to marry, provided the contract was entered into by the woman in ignorance of the promisor's existing marriage.

2. SAME.

Plaintiff contracted to marry defendant in ignorance of the fact that he was already married. After discovering the marriage, she repudiated the contract, unless defendant should furnish evidence of a divorce, which he represented to her had been obtained by him. He engaged to do this, and a date was then fixed for the marriage, at his instance. *Held,* that there was no abandonment of the original contract of marriage on the part of plaintiff, and that she was entitled to recover against defendant, in default of his production of such evidence.

3. SAME—ESTOPPEL.

In such case plaintiff is not estopped by the fact that she acquiesced in the postponement of the marriage until papers showing a divorce should be produced.

Appeal from circuit court, New York county.

Action by Caroline J. Cammerer against Clemens Muller to recover damages for an alleged breach of contract to marry. From a judgment entered on

verdict of a jury, and from an order denying his motion for a new trial, defendant appeals.

Argued before VAN BRUNT, P. J., and DANIELS and LAWRENCE, JJ.

*Robert H. Griffin,* (*Robert G. Ingersoll,* of counsel,) for appellant. *Daniel Dougherty, E. H. Lewis,* and *Arthur P. Hodgkins,* for respondent.

VAN BRUNT, P. J. This action was brought to recover damages for breach of a contract of marriage. The record of the proceedings of the trial, and the points of counsel submitted upon the argument of this appeal, are excessively voluminous, but the only points presented upon this appeal are few in number, and embraced within a very small compass. It will not, therefore, be necessary to rehearse in detail either the facts which the jury must have found to have been established by the evidence, or the evidence which it is claimed by the appellant showed that some of those facts, at least, did not exist. But we shall briefly call attention to the points of law which are involved upon this appeal. That some sort of a contract of marriage was entered into between the plaintiff and the defendant is not seriously questioned. But the nature of that contract, the circumstances under which it was entered into, and the knowledge of the plaintiff in respect to the condition of the defendant, are subjects in respect to which there has been a great conflict of testimony. But, in our judgment, the whole question turns upon what the plaintiff knew of the condition of defendant in respect to his ability to marry on the 17th of December, 1885, the day upon which this alleged contract was entered into. It is claimed by defendant that at that time the plaintiff was aware that the defendant had a wife living, and that no marriage could take place between them until this difficulty had been removed, either by the death of the wife or by the defendant procuring a divorce from her. Now it is clear that, if this was the fact, then no contract which could be enforced in a court of law could possibly be entered into between the parties. If the plaintiff knew the fact that the defendant's wife was living, then she knew that he was incapable of fulfilling any contract of marriage which might be entered into.

It is claimed, in addition, that an action on contract will not lie for a breach by a married man of a promise of marriage, and that the court erred in overruling the plaintiff's objection that the respondent failed to establish the fact that the defendant could have complied at any time with the alleged contract of the 17th December, 1885. It seems to us that this claim is entirely without foundation. Such a rule would be offering a premium upon villainy. It cannot be that where a man induces a woman to enter into a promise of marriage, she knowing of no disability, that she cannot recover damages for the breach of such contract, if it turns out that he is incapable of fulfilling it. We are cited to the case of *Haviland* v. *Halstead,* 34 N. Y. 643, but it expressly appeared in that case that the plaintiff knew of the condition of the defendant, and consequently a recovery could not be had; and our attention has been called to no case holding that, because one party enters innocently into a contract, and the other is incapacitated from fulfilling it, and has entered into the contract with fraudulent intent, the innocent party has no remedy. No such rule could for a moment find a lodgment in any court of law or of equity. As already said, it would be giving a premium to a villain to enter into a contract of this kind, and, if you please, apparently consummate it, and then, when called to respond, claim that he cannot be held because he never could have completed the contract.

It is alleged, however, that the evidence in this case shows, by a preponderance of evidence, that the plaintiff knew the fact that defendant was a married man when she entered into this agreement, whatever it was, with him. It is true that a number of witnesses have been examined who have testified to facts, circumstances, and conversations tending to establish this

proposition. But the testimony of the plaintiff was explicit that she knew nothing of defendant's disability until after the contract had been entered into, and supposed him to be a widower, and did not learn to the contrary until the succeeding January, when she wrote to the defendant, under date of January 6, 1886, as follows: "MY DEAR CLEMENS: Mrs. Richter called upon me this morning, and gave me startling revelations, which to my sensitive nature were more than painful. It is her intention to go to New York, and find out several points relative to you, and explain to your sons that she is in no way instrumental in the step you contemplate taking,—marriage. Do come to Philadelphia at your earliest convenience, for I must have an understanding. Let me know when I can expect you." In reply to this letter, on the 8th of January, 1886, the defendant writes: "MY BELOVED LINCHEN: Your lines of the 6th I received, and am much surprised that Mrs. Richter takes so much interest in me. She can tell my sons nothing new. They are fully instructed with everything. I cannot go to Philadelphia before Thursday, but will find out in the interim what time I will arrive. Till then take good care of yourself, and remain in good spirits." It seems to us, as it undoubtedly seemed to the jury, that this correspondence is conclusive proof that the defendant did not then even pretend, much less believe, that the plaintiff knew of the fact that he was a married man until she was so informed by Mrs. Richter, some time in January, 1886.

The plaintiff further testified, which is in entire harmony with this correspondence, that the defendant came to see her on the 15th January, and that he told her: "Believe me. I am everything I represented myself to be. I am free to marry,—to marry you,—before the whole world. That I have been married is true. It needs not Mrs. Richter to come and tell you that; but I am divorced,—divorced long before I ever knew you,—and am free to marry." All the evidence upon this subject was submitted to the jury. This issue was presented by the learned court fairly and squarely to the jury for their determination, and to the satisfaction of the counsel for the defendant, for no exception is taken thereto, and the jury have found in favor of the plaintiff that she did not know at the time that this contract of marriage was entered into that the defendant was a married man; and we think, as already stated, the preponderance of the evidence supports that view, notwithstanding the number of witnesses who were examined for the purpose of showing declarations in reference to the existence of a wife of the defendant in the hearing of the plaintiff, and also declarations by her showing such knowledge.

But it is claimed that the court erred in not dismissing the complaint upon the close of the plaintiff's proof, because the evidence shows that the contract of the 17th of December, 1885, was abandoned, and a new contract entered into, which fixed the date of the marriage for October, 1886; the performance of said agreement in and by that contract having been conditioned, at the instance of the plaintiff, upon the production by the defendant of papers showing that the defendant was divorced from his wife. That the plaintiff refused to enter into any pretended contract of marriage with the defendant until he exhibited papers showing a divorce after she learned that he had a wife living is amply established by the testimony. It is sworn to by the plaintiff that at this interview on the 15th of January, 1886, the defendant represented himself to have been divorced. She asked to see the papers, and that is the way in which the thing stood until August, 1886, she being willing, upon the production of the papers showing that he had been legally divorced, to fulfill the contract. He not producing the papers at this time, they came to the lawyer's office, and then she learned in reference to proposed proceedings in the New Jersey courts to obtain a divorce. She was willing that that divorce should be obtained; and it was at this time that the time for the fulfillment of the contract of marriage was first fixed, namely, in October, 1886. In connection with this interview the defendant represented that his lawyer had

failed to get the copy of the papers; that he already had a decree of divorce, obtained in Indiana; but that her father thought it better to get a decree in New Jersey, in which place the defendant's wife was confined in a lunatic asylum. The learned court refused to dismiss the complaint upon this ground, because the evidence did not show an abandonment of the original contract of marriage; that there was a postponement of the marriage only until the defendant could produce these papers, showing that he had been legally divorced. It is clear, from a consideration of this testimony, that that was an inference which might fairly be drawn from the facts which were then before the jury. The plaintiff testified to the fact that the defendant represented himself all the time to be in a condition to comply with his contract of marriage, and that it was owing to the negligence of his lawyer that he had not got the papers showing that he had been divorced in Indiana. It is true the plaintiff knew about the commencement of these proceedings in New Jersey, but, according to her evidence, if the Indiana papers had been produced she would have fulfilled her contract, and the jury might very well find from the evidence of the plaintiff that there never was an abandonment of the original contract of marriage, only a postponement of its completion until the unexpected impediment which had arisen should be removed. Now, it is undoubtedly true that, if the jury had found that the original contract was abandoned, and a new one entered into, the new contract would be void, under the principles already enunciated. But it cannot be that where the plaintiff has entered into a contract in good faith, which is perfectly valid, and an impediment arises which would have rendered the contract void if she had known it, because she consents to wait until that impediment is removed she loses all her rights. So long as the original contract exists, and has not been waived, so long does her right to recover exist. The subsequent transactions might very well be considered by the jury in mitigation of damages, as was charged by the learned court at the request of the defendant. But nowhere has the defendant in any way requested the court to submit to the jury any question in relation to the abandonment of the original contract.

It is further urged that the court should have dismissed the complaint because the plaintiff, upon finding that the defendant was married, refused upon her part to carry out the contract, and that she acquiesced in the postponement of the marriage until a decree or papers showing a divorce were produced. It is said that in this state an offer to fulfill the marriage contract must be made by the plaintiff before she can recover; and the plaintiff in this action, having refused to allow the defendant to commit bigamy by entering into what she knew would be an absolutely void marriage with him, cannot recover upon the contract made with him by her in good faith. The very instant that this defendant made the contract with the plaintiff that contract was broken by him. He knew that it was impossible for him to carry it out. She had a right to claim that he should be in a condition to enter into a legal marriage with her; and, as far as she was concerned, it made no difference what his *status* might be; and, unless she knew of the fact when she entered into the contract with him, it became a contract by which he was bound to her either by its legal fulfillment or paying damages for its breach. If he induced the plaintiff, by suppression of facts, to enter into a contract with him which it would be impossible for him to fulfill, certainly he is not entitled to much sympathy when he is called upon to respond in damages for its breach. The whole defense of the defendant in this case has been entirely disposed of by the verdict of the jury. On every question which could affect the right of the plaintiff to recover the jury found against him, and it is idle to discuss the testimony in respect to those proceedings which occurred subsequent to the entering into the promise in question, in view of the fact that the defendant claimed from the court no special instructions in respect thereto, except so far as they might be considered in mitigation of damages. The main ques-

tions involved in this case were submitted by the court fairly to the jury, entirely to the satisfaction of the defendant, because no exceptions were taken to the charge; neither could there have been any.   The jury have considered the evidence; they have come to the conclusion that the plaintiff entered into this contract in good faith, in ignorance of the fact that the defendant had a wife living, and that whatever subsequently took place was simply a postponement of the completion of this contract until the impediment might be removed.   She certainly was not compelled to wait forever, and it is not claimed on the part of the defendant that to this day he was ever in a condition to fulfill this contract.   Under these circumstances, we see no reason to interfere with the finding of the jury, and the judgment and order should be affirmed, with costs.   All concur.