## CARTER v. RINKER.

(Circuit Court, D. Kansas, First Division. December 13, 1909.)

1. BREACH OF MARRIAGE PROMISE (§ 3*)—PARTIES—INCAPACITY—KNOWLEDGE.

An unmarried woman may recover in an action ex contractu for breach of promise made by a married man, where she had no knowledge of his disqualification to perform at the time of the promise and acceptance.

[Ed. Note.—For other cases, see Breach of Marriage Promise, Cent. Dig. § 5; Dec. Dig. § 3.*]

2. BREACH OF MARRIAGE PROMISE (§ 3*)—CONTRACT—INVALIDITY.

Where, at the time of making a contract to marry, both parties are aware, or have reason to know, that one of them is under coverture, the contract is contra mores and void.

[Ed. Note.—For other cases, see Breach of Marriage Promise, Cent. Dig. § 5; Dec. Dig. § 3.*

Effect of existing marriage on subsequent contract to marry, see note to Davis v. Pryor, 50 C. C. A. 583.]

3. ESTOPPEL (§ 107*)—PLEADING.

An estoppel arises as a question of law from the facts pleaded, and hence is enforceable, though the pleading does not designate any act as an estoppel.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 297; Dec. Dig. § 107.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

At Law. Action by Jessie Carter against James M. Rinker. On demurrer to petition. Overruled.

Charles Blood Smith, T. A. Milton, and Samuel Barnum, for plaintiff.

David Ritchie, for defendant.

PHILLIPS, District Judge. This is an action for breach of promise to marry. While the amended petition was not wholly free from the criticism made by defendant's counsel, for presenting the double aspect of an action in assumpsit for breach of promise to marry and one in trespass for fraud and deceit in bringing about the engagement, which respective actions might present a different measure of damages, this objection has been obviated. On the hearing of the motion of the defendant striking at this claimed defect, plaintiff's counsel stated that he construed the petition as founded alone on a breach of promise, and he would so try his case. Thereupon the motion was denied, and the defendant has demurred to the petition as not stating a cause of action.

The substance of the allegations of the petition is that at the time of making the contract, in February, 1907, the plaintiff was, and ever since has remained, an unmarried woman; that she then, at defendant's request, promised to marry him, and he at the same time promised to marry her; that the defendant at the time represented himself to be an unmarried man, when in fact he was then married to another person, of which the plaintiff had no notice; that he represented himself as a man of wealth; that he was a widower, and that if she married him he would establish their home at Kansas City, Mo., apart from his children; that after said contract of marriage was announced and made known to plaintiff's relatives and friends, at the urgent request of the defendant, she discarded former friends and ceased to have social intercourse with them; that she believed the representations of the defendant that he would carry out his promise of marriage; that he thereafter gave her constant attention, referring to her as "wife," "darling," and "sweetheart," in their correspondence; that as his fiancée, and at his earnest solicitation, and in expectancy of said marriage, she consented to sexual intercourse with him; that this continued until about March or April, 1907, when she discovered for the first time that he was a married man, and had been such during their entire acquaintance, during which time he was living with his wife in the state of Kansas; that until such discovery she was at all times ready and willing to marry the defendant. The petition then alleged that in consequence of her situation she was greatly humiliated, prostrated, etc.

The question presented by the demurrer for decision is: It appearing that the defendant, at the time of making the promise, was a married man and incapable of performing the contract, is this action maintainable? The argument of defendant's counsel is that such a contract is contrary to public policy, and as such is nonactionable; that being incapable of performance by the defendant at the time it was entered into, and ever thereafter during his coverture, the general rule of law is that such a promise cannot be the basis of a suit at law.

I have examined the authorities cited in support of the foregoing proposition. In Eve v. Rogers, 12 Ind. App. 623, 40 N. E. 25, the court used the following language:

"The contract must be binding upon both parties, or it cannot bind one. Hence it follows that a contract of marriage entered into between a man and a woman, one of whom is qualified to make such a contract and the other is not, is void and cannot be enforced. Neither can damages be recovered for a breach thereof, for the reason that the contract, not being binding as to one, is not binding as to the other."

No authorities were cited in support of this broad proposition.

The case of Leaman v. Thompson, 43 Wash. 579, 86 Pac. 926, is not in point. The evidence there showed that when the first promise of marriage was made the plaintiff herself was under coverture, and, of course, she could not predicate an action upon such a contract contrary to public policy; she herself being aware of her incompetency. The case turned upon the question of fact as to whether or not the promise was not renewed after the defendant was divorced.

The case of Buelna v. Ryan, 139 Cal. 630, 73 Pac. 468, is not different in principle from the last case cited. The question there involved was whether or not the plaintiff, a divorced woman, could enter into such contract within a year subsequent to the decree of divorce under the Civil Code of California. The court held:

"That when she was divorced she was no longer a married woman, and that under the Code she could not marry in the state until after the lapse of the year; she had the right to marry after the expiration of the year; that she had the right to marry at a certain time, and to agree to so marry, provided the agreement was not consummated until the end of the year."

Reed v. Reed, 49 Ohio St. 654, 32 N. E. 750, only holds:

"That an action will not lie in the state of Ohio to recover damages for a breach of contract of marriage made in that state between first cousins"

—for the reason that the statute prohibits such contract.

The case of Fuller v. Fuller, 33 Kan. 582, 7 Pac. 241, only holds:

"That where a man innocently marries a woman who has a husband living, he may maintain an action against her in equity, independent of the statutes relating to divorce and alimony, to have the colorable marriage declared a nullity."

Werner v. Werner, 59 Kan. 399, 53 Pac. 127, 41 L. R. A. 349, 68 Am. St. Rep. 372, is practically to the same effect.

The case of Noice v. Brown, 38 N. J. Law, 228, 20 Am. Rep. 388, cited by counsel for defendant, does not support his contention. That presented the naked question of an agreement of a married man to marry when he should obtain a decree of divorce from his wife. It was held that an agreement to marry the plaintiff under such an arrangement as that was contrary to public policy and void. There both parties were entering into such agreement with the full knowledge of the present disability of one of them. Such a compact is so manifestly pernicious in its tendency as to demand its condemnation.

It seems to be a well settled rule of the English common-law courts that this action is maintainable. They hold that the promise of the plaintiff to marry the defendant within a reasonable time, which implies a promise to remain single for a reasonable time, is a sufficient

consideration to support the promise. The leading case is that of Wild v. Harris, 7 Com. Bench, 999, in which Chief Justice Wilde said, inter alia:

"The defendant's promise to marry the plaintiff within a reasonable time was not absolutely impossible of performance; for his wife might have died within a reasonable time, and so he would have been in a condition to have performed his promise to the plaintiff."

In Millward v. Littlewood, 5 Exc. Rep. 773, Parke, B., at page 778, said:

"The promise by the defendant to marry the plaintiff implies, on his part, that he is then capable of marrying, and he has broken that promise at the time of making it. The consideration to support the promise is that the plaintiff, at the request of the defendant, engaged to marry him within a reasonable time, and therefore she remained unmarried; and that is a sufficient consideration to bind the defendant."

To the same effect is Daniel v. Bowles, 2 C. M. P. 553.

I think it not too much to say that the decided weight of authority shows that the foregoing is the American rule. See Cammerer v. Muller, 60 Hun, 578, 14 N. Y. Supp. 511, affirmed in 133 N. Y. 623, 30 N. E. 1147; Paddock v. Robinson, 63 Ill. 99, 14 Am. Rep. 112; Coover v. Davenport, 1 Heisk. (Tenn.) 368, 2 Am. Rep. 706; Pollock v. Sullivan, 53 Vt. 507, 38 Am. Rep. 702.

The leading case, perhaps more generally recognized and followed in this country, is that of Kelley v. Riley, 106 Mass. 339, 8 Am. Rep. 336, in which Colt, Judge, said:

"The defendant is not permitted to escape responsibility on the ground of his present legal inability to perform a promise of marriage to an innocent party. The damages to the plaintiff are certainly not diminished by the consideration that the promise was made under such circumstances. The strict rule that a consideration to support a promise is insufficient, if its performance is utterly and naturally impossible, is met by the suggestion that, even if the future performance here is to be treated as utterly impossible, yet the detriment or disadvantage which must necessarily result to the plaintiff in relying for any time on the promise affords sufficient consideration to support the defendant's contract. 2 Parsons on Contracts (5th Ed.) 67; Wild v. Harris, 7 C. B. 999."

This seems also to be the view of the Circuit Court of Appeals of this Circuit, expressed by Judge Adams in Davis v. Pryor, 112 Fed. 274, 50 C. C. A. 579, in which he said:

"We fully recognize the just and well-settled rule of law by which a man, even though married, and for that reason incapacitated from executing a contract or promise of marriage to another, shall not escape liability for damages occasioned to a third party, if in point of fact, she entered into the contract with him in ignorance of the fact that he had a living wife"—Citing Kelley v. Riley, supra, and Bishop, Mar., Div. & Sep. § 192.

This case holds, very properly, that where at the time of making the promise both parties are aware, or have reason to know, that one of them is under coverture, no action can be maintained for the breach of such promise. No action can be predicated of such a compact contra mores. Some of the authorities base the right of action in such cases upon the ground that the defendant is estopped by his own conduct to assert nonliability for breach of such promise. This rests upon the rule of law that:

"Where a party by his acts or words causes another to believe in the existence of a certain state of things, and induces him to act on that belief so as to alter his own previous condition,' he will be concluded from averring anything to the contrary against the party so altering his condition." Chouteau et al. v. Goddin et al., 39 Mo. 250, 10 Am. Dec. 462.

The suggestion of counsel for defendant that estoppel cannot avail the plaintiff, for the reason that it is not pleaded, in my opinion is not tenable. An estoppel arises as a conclusion of law from the facts pleaded, rather than from the mere designation of the act as an estoppel.

It results that the demurrer must be overruled.