DELISI v. FICARROTTA et al.

(Supreme Court, Appellate Term. May 25, 1912.)

1. MORTGAGES (§ 516*)—FORECLOSURE—SALE—RIGHT TO BID—AGREEMENTS.

A second mortgagee has the right to bid at public sale on the foreclosure of the first mortgage, and his abandonment of this right is a sufficient consideration for the promise of a third mortgagee to pay the second if he purchases the property.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1518; Dec. Dig. § 516.*]

2. CONTRACTS (§ 142*)—LEGALITY—SUPPRESSING COMPETITION AT SALE—QUESTIONS FOR JURY.

Whether an agreement between the second and third mortgagees, whereby the second mortgagee was not to bid at the foreclosure sale of the first mortgage, was entered into with honest motives, is a question for the jury.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1826; Dec. Dig. § 142.*]

3. CONTRACTS (§ 130*)—LEGALITY—SUPPRESSING COMPETITION AT SALE.

While an agreement which tends to restrain competition at a public sale is void as against public policy, an agreement made in good faith between a second and third mortgagee, whereby the second mortgagee agreed not to bid at the sale on foreclosure of the first mortgage in consideration of the third mortgagee paying the second mortgage if he purchased, is valid.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 654–658; Dec. Dig. § 130.*]

4. ESTOPPEL (§ 83*)—EQUITABLE ESTOPPEL.

Where property, which was subject to mortgages, was about to be sold upon foreclosure of the first, one who represented to the second mortgagee that he was the third mortgagee, and agreed that if the second mortgagee would refrain from bidding at the sale he would, if he purchased the property, discharge the second mortgage, is, after having purchased the property, estopped from denying that he was the third mortgagee.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 218, 227–229; Dec. Dig. § 83.*]

5. CONTRACTS (§ 349*)—BREACH—EVIDENCE.

In an action by a second mortgagee, who sought to charge a purchaser at foreclosure of the first mortgage, under an agreement between the second mortgagee and the purchaser, that if the second mortgagee did not bid, the purchaser, who claimed to be a third mortgagee, would dis-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

charge the mortgage, evidence that the father of the purchaser owned the third mortgage was admissible.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1096, 1781–1784, 1788–1798, 1809, 1811–1814, 1817, 1818; Dec. Dig. § 349.*]

6. CONTRACTS (§ 102*)—AGREEMENT NOT TO BID—INVALIDITY.

Where a second mortgagee in good faith entered into an agreement with one who represented himself to be a third mortgagee that he would refrain from bidding at foreclosure sale under the first mortgage, if the third mortgagee would discharge his mortgage, the unlawful object of the one who represented himself to be a third mortgagee will not invalidate the agreement.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 462–467; Dec. Dig. § 102.*]

Appeal from City Court of New York, Trial Term.

Action by Martine Delisi against Natale Ficarrotta and another. From a judgment dismissing the complaint, plaintiff appeals. Reversed and remanded.

Argued May term, 1912, before SEABURY, LEHMAN, and PAGE, JJ.

John L. Bernstein, of New York City, for appellant.

Samuel Sturtz, of New York City, for respondents.

SEABURY, J. This action was brought upon a written contract. Upon the trial, the plaintiff proved that he was the owner of a second mortgage for $1,100 on the premises 719–721 East 213th street in the city of New York. The person holding the first mortgage upon the property had commenced an action to foreclose his mortgage, and the plaintiff in this action was named as a party defendant. That action resulted in a judgment of foreclosure in favor of the plaintiff, and the premises were sold at public auction on February 5, 1911. On February 5, 1911, and before the sale had taken place, the defendants stated to the attorney for the plaintiff that the defendant Ficarrotta was the owner of the third mortgage upon the premises in question, and that, if the plaintiff would agree not to bid at the public sale, and would permit the defendants to buy the property, they would pay the plaintiff the sum of $1,100 due upon his second mortgage, together with the interest, costs, and expenses which he had incurred in the foreclosure suit. The plaintiff accepted this offer, and the following instrument was signed and delivered by the defendants:

"We Natale Ficarrotta and Lore do hereby agree that if the premises under foreclosure in action Kahle v. Colletti, etc., situate on 213 street near White Plains Road are bought in by us and in order to secure the payment due Martino Delisi, under his mortgage, that we will pay said Delisi, on the closing of the title under the terms of sale, the full amount of balance under his mortgage together with interest, costs and expenses under his foreclosure less amount turned over by the receiver.

"Dated                                                  N. Ficarrotta.
                                                          "Frank P. Lore."

The plaintiff attended the sale, but refrained from bidding. As a result of the sale, the plaintiff received from the receiver who had been appointed in the foreclosure action only the sum of $454.90. The

property was purchased at the foreclosure sale by these defendants. The plaintiff instituted this action to recover the amount specified in the instrument quoted above, less the sum of $454.90. At the close of the plaintiff's case, the learned court below dismissed the complaint, upon the ground that the instrument sued upon was without consideration, and that it was contrary to public policy and void.

[1] The plaintiff certainly had a right to bid at the public sale, and his abandonment of this legal right was a sufficient consideration for the promise of the defendants. Hamer v. Sidway, 124 N. Y. 538, 27 N. E. 256, 12 L. R. A. 463, 21 Am. St. Rep. 693.

[2, 3] The only question which requires discussion is whether or not the consideration for the contract was legal or illegal. The early rule of law condemned without discrimination all agreements between persons not to bid at judicial or public sales. This rule has, however, been modified, and it is now well settled in this state that, where such agreements are made for an honest purpose, and designed to protect existing interests, they are valid. The question as to whether the agreement in such a case was entered into with honest motives is for the jury to determine. Phippen v. Stickney, 3 Metc. (Mass.) 384; Marsh v. Russell, 66 N. Y. 288; Marie v. Garrison, 83 N. Y. 14; Hopkins v. Ensign, 122 N. Y. 144, 25 N. E. 306, 9 L. R. A. 731; People v. Stephens, 71 N. Y. 527; Myers v. Dorman, 34 Hun, 115. The rule which declares void as against public policy agreements, the necessary operation of which tend to restrain competition at a public sale, is now made dependent upon the intent of the parties. Thus, in Phippen v. Stickney, supra, the court, after reviewing the authorities upon the subject, said:

"The extent to which the doctrine of invalidating such contracts can be safely carried would rather seem to embrace within the rule all cases of fraudulent acts, and all combinations having for their object to stifle fair competition at the biddings, with the design of becoming the purchasers at a price less than the fair value of the property. Beyond this, the application of the principle contended for may be found productive of mischief and an unwarrantable interference with the course of business in auction sales. We are therefore of opinion that an agreement between A. and B. that A. will permit B. to become the purchaser of certain property about to be offered at sale at public auction, and that A. shall participate with B. in the benefits of the purchase, will or will not be fraudulent, as the circumstances of the case show innocence of intention or a fraudulent purpose in making such agreement; that where such agreement is made for the purpose and with the view of preventing fair competition, and by reason of want of bidders to depress the price of the article, offered for sale, below the fair market value, it will be illegal, and may be avoided as between the parties, as a fraud upon the rights of the vendor. But, on the other hand, if the arrangement is entered into for no such fraudulent purpose, but for the mutual convenience of the parties, as with the view of enabling them to become purchasers, each being desirous of purchasing a part of the property offered for sale, and not an entire lot, or induced by any other reasonable and honest purpose, such agreement will be valid and binding."

In Marsh v. Russell, supra, the Court of Appeals of this state declared that the true rule governing this subject was laid down in Phippen v. Stickney.

In Marie v. Garrison, supra, the court, by Andrews, J., said:

"This was not the case of a combination between persons having no prior interest in the property to suppress bidding at a judicial sale for speculative purposes. The arrangement made was, so far as appears, a reasonable and honest attempt on the part of the plaintiffs to save their property from being sacrificed on the foreclosure. The other stockholders and bondholders were at liberty to bid on the sale. The mere fact that an arrangement, fairly entered into, with honest motives, for the preservation of existing rights and property, may incidentally restrict competition at a public or judicial sale, does not, we think, render the arrangement illegal. The question of intent, at all events, is one for the jury, upon the whole facts as they shall appear on the trial."

In Myers v. Dorman, supra, the court, after stating the general rule, said:

"But there are cases holding that the fact that an agreement has the effect to prevent competition at a public sale does not necessarily render the agreement void; it depends on the intent."

In the same opinion, the court, by Smith, P. J., said:

"The doctrine deducible from the case of Phippen, and the others above cited in which it is approved and followed, seems to be that an agreement made by parties, one or more of whom has a lien upon, or an interest in, the property about to be disposed of at a public or judicial sale, is not against public policy, because it has the effect to prevent competition at such sale, provided it was made, not with the intent of producing that effect, but was fairly made to protect the lien or interest of the parties, or for any other reasonable and lawful purpose."

In People v. Stephens, supra, Allen, J., after stating the general rule, said:

"Agreements between two or more persons that all but one shall refrain from bidding, and permit that one to become the purchaser, are not, however, necessarily and under all circumstances vicious. They may be entered into for a lawful purpose and from honest motives, and in such cases may be upheld, and will not vitiate the purchase. * * * Neither do they necessarily, and under all circumstances, vitiate the completed contracts to which they refer, and in respect to which they are made."

In this case it is clear from the authorities that, if the statement made by the defendants that Ficarrotta was the owner of the third mortgage was true, the defendants would have had such an interest in the property as would preclude the contract from being declared void as a matter of law, unless the parties were actuated by a dishonest intent.

[4] The representations which the defendants made as to the ownership of the third mortgage were false, and were known to the defendants at the time they made them to be false. The representation was made to induce the plaintiff to believe it to be true, and to change his position in consequence of his belief in its truth. The plaintiff did believe it to be true, and abstained from bidding in consequence of the representation and the contract which was made pursuant to it. Under these circumstances, I think that the defendants are estopped from denying the truth of the assertions which they made.

"Wherever," says Mr. Herman, "a man has made a false assertion calculated to lead others to act upon it, and they have done so to their prejudice,

he is forbidden, as against them, to deny that assertion." Section 6, vol. 1, Estoppel and Res Judicata.

The application of the principle of estoppel to this case does not imply that a contract which is illegal can be enforced by invoking the principle of estoppel against the person who is sued upon it. To apply such a rule would obviously be clearly against public policy. In the present case, the plaintiff was not consciously a party to any illegal contract. The defendants alone were dishonest. The plaintiff believed the representation of the defendants to be true, and was willing to facilitate them in protecting the interest which he believed one of them possessed in the property. If the facts had been as represented by the defendants, the agreement which was made would not violate any rule of public policy. The plaintiff was misled as to the true facts, by the trickery of the defendants. The defendants, having successfully defrauded plaintiff, now seek to cheat justice by asserting that the contract, which enabled them to accomplish this purpose, is against public policy. This is not a case where the policy of the law prohibits or condemns certain acts. In such cases, the acts are condemned, and the motive or intent which actuated the doer cannot change its quality as an illegal act. Here, the act or contract which the parties entered into was not of such a character as to be declared illegal under all circumstances. Whether it was legal or illegal depended upon the purpose or motive which actuated the parties to it. In such a case, where the legality or illegality of a contract is dependent upon the intent of the parties, the contract cannot be held invalid as against the innocent party at the request of the guilty party who has reaped the fruits of his deceit. To prevent such a consequence, the court may well, it seems to me, invoke the principle of estoppel without fear that its action in so doing will be construed into a precedent to be followed in cases where the contract is itself illegal, regardless of the motive or intent of the parties. Richardson v. Crandall, 48 N. Y. 348, 362.

[5, 6] Even the respondents concede that, if Ficarrotta had owned the third mortgage on the property, and the parties had been actuated by honest motives, the contract would have been enforceable against them. They claim, however, that as they misrepresented the facts, and induced the plaintiff to rely upon their misrepresentations, the contract is tainted with illegality, and is therefore unenforceable. Moreover, it appears from the evidence that, while the statement of the defendants that Ficarrotta was the owner of the third mortgage was untrue, it is a fact that the father of Ficarrotta did own a third mortgage upon the premises. Thus, while Ficarrotta had no legal interest in the property, he may well, at the time the representation was made, have been actuated by a desire to protect this interest which his father had in the property, and not to restrict competition. The fact that his father was the owner of such third mortgage was a circumstance which the jury had the right to take into consideration in determining whether or not the contract was made with an honest or dishonest purpose. It is true that in the brief which the respondents submit to this court they, unequivocally, disavow that they had such

a lawful purpose. The case is barren of any evidence to show that the plaintiff was a party to the unlawful purpose which these defendants. insist actuated them. The plaintiff being innocent of any intentional wrongdoing, we do not think the self-proclaimed unlawful purpose of the defendants is enough to entitle them to repudiate their contract. The legality of the contract is dependent upon its object or purpose, and the criterion by which this is to be determined is the intent of the parties. This case is therefore to be distinguished: First, from cases where the parties are in pari delicto, for in such cases the maxim in pari delicto potior est conditio defendentis applies. Second, from those cases where the object of the agreement is illegal, though the intent of both parties was innocent; in such cases the nature of the object characterizes the contract, and it is void. Third, from cases where the object of the agreement is innocent, but the intention of *both* parties is unlawful. In such cases the unlawful intention taints the contract, and it is void.

The authorities, however, recognize another class of cases where the object of the agreement is innocent, and there is an unlawful intention on one side only, of which the other is ignorant. In such cases, the latter is entitled to the benefit of the contract, or, if it is executory, he may rescind it. The last class of cases is closely akin to the present, although not precisely the same. Here, the object sought to be accomplished by the agreement cannot be said absolutely to be innocent. Its legality or illegality is dependent upon the intent of the parties. In such a case, where there is an unlawful intention on one side only, of which the other party is ignorant, and the agreement is so far executed that the guilty party has received the benefits under it, the innocent party is entitled to enforce it. If the guilty party receives the benefit of such a contract, he cannot repudiate it when sued upon it by the innocent party who was ignorant of his unlawful intent. A contrary rule would, as was well said by Van Brunt, P. J., "be offering a premium upon villainy." Cammerer v. Muller, 14 N. Y. Supp. 511,[1] affirmed 133 N. Y. 623, 30 N. E. 1147. The authorities on this subject are not numerous, but the principle asserted by them is clear and firmly established. Where the intention of one of the parties is lawful, and the contract is capable of being executed in a lawful manner, the innocent party is entitled to the benefits under the contract, notwithstanding the secret, unlawful intent of the other party. Cowan v. Milbourn, L. R. 2 Exch. 230; Clay v. Yates, 1 H. & N. 73; Pixley v. Boynton, 79 Ill. 351; Quirk v. Thomas, 6 Mich. 76, p. 79, n. 1; O'Brien v. Brietenbach, 1 Hilt. 304.

In Cammerer v. Muller, supra, it was held that an action might be maintained upon a married man's breach of contract to marry, provided the contract was entered into by the woman in ignorance of the promisor's existing marriage. In reference to the claim that such an action would not lie, Van Brunt, P. J., said:

"It seems to us that this claim is entirely without foundation. Such a rule would be offering a premium upon villainy. It cannot be that where a man

---

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 60 Hun, 578.

induces a woman to enter into a promise of marriage, she knowing of no disability, that she cannot recover damages for the breach of such contract if it turns out that he is incapable of fulfilling it. * * * Our attention has been called to no case holding that, because one party enters innocently into a contract, and the other is incapacitated from fulfilling it, and has entered into the contract with fraudulent intent, the innocent party has no remedy. No such rule could for a moment find a lodgment in any court of law or of equity. As already said, it would be giving a premium to a villain to enter into a contract of this kind, and, if you please, apparently consummate it, and then, when called upon to respond, claim that he cannot be held because he never could have completed the contract."

To the same effect, also, is Kerns v. Hagenbuchle, 17 N. Y. Supp. 369. In Pixley v. Boynton, supra, the court said:

"The intention of the parties gives character to the transaction, and if either party contracted in good faith, he is entitled to the benefit of his contract, no matter what may have been the secret purpose or intention of the other party."

In Williams v. Tiedemann, 6 Mo. App. 269, in discussing whether or not an agreement was a wagering contract, the court said:

"If one intends a bona fide sale or purchase, while the other means only a gambling risk upon prospective differences, there will be no propriety in depriving the former of the benefit of his contract because of a secret reservation in the mind of the latter. As every contract, to be enforced, must be upon the mutual understanding of the parties, so a contract, to be denied enforcement because of its illegitimate composition, must have been so contrived in the common interest of the makers, or at least in the interest of him who is to be precluded of its benefits."

In Whitesides v. Hunt, 97 Ind. 191, 210, 49 Am. Rep. 441, the court said:

"And if either party contracts in good faith, he is entitled to the benefit of his contract, no matter what may have been the secret purpose or intention of the other."

From these authorities, we think it is evident that the plaintiff, prima facie, established a cause of action, and that it was error to dismiss the complaint.

Judgment reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.