ROBERTSON, Justice.
Dr. Lloyd Berrong, M.D., John Felix Miller, pharmacist, and Lee L. Cameron, pharmacist, each invested $3,000 in a small corporation known as Cooper Drugs, Inc., which corporation owned and operated two drug stores, one on Cooper Road in Jackson, Mississippi, and one at Plain, Mississippi. Miller operated the Cooper Road Drug Store, and Cameron operated the drug store at Plain. Berrong, Miller and Cameron were officers and directors of the corporation, and also its only stockholders.
Cooper Drugs, Inc., fell on hard times, and the Director of Internal Revenue gave notice of a public auction sale to be held on February 27, 1961, for the sale of the assets of the corporation to satisfy unpaid and delinquent federal taxes.
On February 24, 1961, A. L. Saunders, Jr., pharmacist, an employee of Cooper Drugs, Inc., approached John Felix Miller about them purchasing the assets of the corporation at the public sale on February 27, 1961. Saunders suggested to Miller that they see Dr. Berrong and offer him $3,000, the amount of his investment in the corporation, if he would not bid against them at the public sale, As a result of a conference with Dr. Berrong, an agreement was drawn by the attorneys representing all parties and signed by Saunders and Miller on February 24, 1961, which agreement provided :
“WHEREAS, Dr., Lloyd G. Berrong is and has been a stockholder as well as member of the Board of Directors of Cooper Drugs, Inc., a Mississippi Corporation, domiciled in the First Judicial District of Hinds County, Mississippi, and has invested $3,000.00 in the stock of said corporation; and
“WHEREAS, the said Cooper Drugs, Inc., has become financially insolvent and a tax lien through the District Director of Internal Revenue has been imposed upon the assets of said Cooper Drugs, Inc., and said District Director of Internal Revenue proposes to sell the assets of said Cooper Drugs, *639 Inc., at public auction on or about the 27th day of February, 1961; and
“WHEREAS, the undersigned, John Felix Miller, and the undersigned, A. L. Saunders, Jr., acting by and through their attorney, Will S. Wells, desire to seek to purchase the assets of the said Cooper Drugs, Inc., at such sale and have requested the said Dr. Lloyd G. Berrong to refrain from bidding against them for such assets.
“NOW, THEREFORE, in consideration of the withholding by the said Dr. Lloyd Berrong of bidding against said parties or others in connection with the distress sale hereinabove described and in consideration of $10.00, cash in hand paid and other good and valuable considerations, the receipt and sufficiency of all of which is hereby acknowledged, we, the undersigned, do hereby jointly and severally agree that within the next thirty-six months from the date hereof and on or before the 24th day of February, 1964 we will pay to the said Dr. Lloyd Berrong the sum of $3,000.00.
“In the event that we default in the payment of the said sum of $3,000.00, we agree that the said $3,000.00 shall bear interest from maturity at the rate of 8% per annum.
“WITNESS OUR SIGNATURES, on this the 24th day of February, 1961.” (Emphasis added.)
The crowd at the public sale was estimated as high as 200 people, and there was active bidding for the different classes of property. There were even two or three bids for the property as a whole. A. L. Saunders, Jr. was the successful bidder at $4,950.00.
About a year later, on February 21, 1962, John Felix Miller executed a release and conveyance to A. L. Saunders, Jr. wherein Miller sold and conveyed his interest in the store fixtures, stock of merchandise and accounts receivable of Cooper Road Drug Store to Saunders. The consideration for the release and conveyance was $1,000 cash,, the assumption by A. L. Saunders, Jr. of a $2,000 indebtedness of Miller to the First Federal Savings and Loan Association, and' “ * * * the assumption by the said A. L. Saunders, Jr., of an'indebtedness of Three Thousand Dollars ($3,000) owing Dr. Lloyd G. Berrong as evidenced by an agreement executed by the undersigned, John Felix Miller, and the said A. L. Saunders, Jr. on- or about March 29, 1961 * *
A. L. Saunders, Jr., also signed and acknowledged this release and conveyance-before a notary public and immediately above his signature is this statement:
“The foregoing release and conveyance and the obligations therein contained are herewith accepted.”
After the note contained in the agreement of February 24, 1961, became due, repeated' demands were made by the plaintiff, both-orally and in writing, to both Saunders and Miller, for the payment of this note. Finally on May 1, 1964, suit was filed in the County Court of the First Judicial District of Hinds County, and the defendants, Saunders and Miller, filed their answers denying the validity of the agreement, and asserting for the first time the affirmative defense-that the agreement was void because it violated the public policy of the State in that it was an agreement to withhold or stifle free bidding and was designed to “chill the-sale.”
This affirmative defense was denied by the plaintiff, and the matter proceeded to-trial on the issues as joined. The jury in the county court returned a verdict for the-plaintiff, Dr. Berrong, and judgment accordingly was entered against Saunders and' Miller.
This judgment for $3,000, plus interest and court costs,' was appealed by Saunders,, only, to the Circuit Court. The Circuit Judge in a written opinion affirmed the judgment of the lower court, and the ap *640 pellant, Saunders, then prosecuted an appeal to this Court.
The only question involved is whether the agreement sued on is against the public policy of the State because it stifles or chills bids at a public sale.
In his opinion affirming the judgment of the County Court, Judge McGowan said:
“This case is ruled by the case of Granberry [Grandberry] vs Mortgage Bond & Trust Company, [159 Miss. 460] 132 So. 334 et seq.
“All of the parties involved in the agreement out of which the suit grew were parties in interest. If the suit brought here had been brought by some general creditor of the corporation who claimed that the arrangement complained of had worked an injustice or loss to him the situation might be different.
“In the argument and briefs much emphasis was placed upon the question of whether or not the stockholders owned a portion of the corporation’s properties. Whatever the result of this contention might be if pursued, the conclusion is evident that the parties in this suit were parties in interest, whether or not either could establish right to any specific property.
“Under the facts here I think the Granberry [Grandberry] case controls, and the judgment is affirmed.”
In Grandberry et al. v. Mortgage Bond & Trust Co., 159 Miss. 460, 132 So. 334 (1931), the Supreme Court was called upon to decide whether or not an agreement between the owners of a third deed of trust on a certain parcel of land and the owner of a second deed of trust whereby the owners of the third deed of trust agreed not to bid at the foreclosure sale in return for a guaranteed lesser amount to be paid for their third deed of trust was valid and enforceable. The appellants in this case, relying on the assurance of the appellee, did not attend the sale and, of course, did not bid on the property being sold. The second deed of trust holder was the only bidder at the sale and bid for the property an amount substantially less than that which he had agreed to. The holder of the second deed of trust immediately took possession and began remodeling the premises and repudiated its agreement with the third deed of trust holders on the alleged grounds that .the agreement, being oral, was not enforceable under the statute of frauds, and on the further ground asserted that the agreement was in contravention of the law in relation to the chilling of bids. The Court, speaking through Justice Griffith, in passing on the latter ground, said:
“As to the second ground, it is enough to say that ‘persons who by virtue of liens or otherwise have an existing interest in the property to he sold may lawfully combine together for the protection of their interests and may even expressly agree not to bid against each other, in the furtherance of a plan to conserve their rights, providing their activities in so doing do not operate to exclude any of the general public from bidding.’ ” 35 C.J. p. 41. See, also, Starkweather v. Jenner, 216 U.S. 524, 529, 30 S.Ct. 382, 54 L.Ed. 602, 605, 17 Ann.Cas. 1167.” (Emphasis added.) 159 Miss. at 467, 132 So. at 335.
While the Grandberry case involved an agreement between lienholders only, the persons who might lawfully combine to protect their interests are not limited to lien-holders. The Court in the Grandberry case specifically extended the umbrella of the law to cover “ * * * ‘persons who * * otherwise have an existing interest in the property to be sold may lawfully combine together for the protection of their interests and may even expressly agree not to bid against each other, * * (Emphasis added.)
The only prohibition is that the activities of those interested in protecting *641 their rights do not operate to exclude any of the general public from bidding. The testimony is uncontradicted that the appel-lee did not discourage any one from bidding at the sale, and the agreement itself certainly does not prohibit or exclude any of the public from bidding.
The conclusion reached by the Supreme Court of Mississippi in the Grandberry case, supra, is supported by a long line of decisions in other states.
One of the landmark cases, cited many times, is Spokane Savings & Loan Soc. v. Park Vista Improvement Co. et al., 160 Wash. 12, 294 P. 1028 (1930). In that case the court was faced with a controversy between junior incumbrancers, the appellants on the one side as holders of laborers’ and materialmen’s liens, and the appellee on the other side as a second mortgagee. The contract in question was an agreement by the appellee to purchase the prior liens of some of the appellants in order to protect appellee’s interest in the mortgaged property. The Court, in passing on the question as to whether the agreement or contract in question did in truth and in fact “chill the sale” and consequently was void as against public policy, had the following to say:
“ ‘The early rule of law condemned without discrimination all agreements between persons not to bid at judicial or public sales. This rule has, however, been modified, and it is now well settled in this state that, where such agreements are made for an honest purpose, and designed to protect existing interests, they are valid. The question as to whether the agreement in such a case was entered into with honest motives is for the jury to determine. * * “ * * * an agreement made by parties, one or more of whom has a lien upon, or an interest in, the property about to be disposed of at a public or judicial sale, is not against public policy, because it has the effect to prevent competition at such sale, provided it was made, not with the intent of producing that effect, but was fairly made to protect the lien or interest of the parties, or for any other reasonable and lawful purpose.” * * * “And if either party contracts in good faith, he is entitled to the benefit of his contract, no matter what may have been the secret purpose or intention of the other.” ’ Delisi v. Ficarrotta, 76 Misc. Rep. 488, 135 N.Y.S. 653, 655.” (Emphasis added.)
“There was no agreement to endeavor to keep the general public from bidding. Though Dalk and Truax agreed not to bid at the sheriff’s sale, that of itself would not be sufficient to render the contract illegal. The rule against chilling bids at a judicial sale does not require the lien creditors of a mortgagor to bid against each other. Lien creditors may lawfully combine, so long as the combination only incidentally affects competition at a judicial sale and does not have the restriction of competition for its main object, and so long as the parties to the combination do not agree to keep the general public from bidding.”
“The qualification of the rule is stated as follows in the latter part of section 53, p. 41, vol. 35, C.J.:
“ ‘Persons who, by virtue of liens or otherwise, have an existing interest in the property to be sold may lawfully combine together for the protection of their interests and may even expressly agree not to bid against each other, in ftrrtherance of a plan to conserve their rights, provided their activities in so doing do not operate to exclude any of the general public from bidding; * * ”
In Investment Registry, Limited v. Chicago & M. Electric R. Co. et al., 206 F. 488, 492 (N.D.Ill.1930), the Court said:
“The general rule is that the public shall be free to bid for property offered at a judicial sale, and the law pro *642 hibits the making of any bargain or the doing of any thing which takes from any part of the public this liberty of action. The term ‘general public/ however, as used in this connection, does not include ‘persons who, by virtue of lien or ownership or otherwise, have an existing interest in the property to be sold.' Such persons may combine together for the protection of their interests. They may even expressly agree not to bid against each other, in furtherance of a plan mutually agreed upon as calculated to conserve their rights. But in so doing, their activities must not operate to exclude any part of the general public as pur-clvasers at the sale.” (Emphasis added.)
In the case at bar, the testimony was that Dr. Berrong’s sole purpose in entering into the agreement proposed by Saunders was to protect a legitimate interest which he had in the property to be sold. Whether the agreement was entered into with honest motives was a question of fact for the jury to determine from the testimony adduced at the trial, and the jury so determined this question in favor of Dr. Berrong. As long as Dr. Berrong agreed in good faith, he is entitled to the benefit of his contract, no matter what may have been the secret purpose or intention of A. L. Saunders, Jr.
There was nothing in the agreement between Dr. Berrong and Saunders and Miller that he, Dr. Berrong, would attempt to keep the general public from bidding, and the unchallenged testimony was that Dr. Berrong did nothing to keep the general public from attending the sale and bidding, and that in fact a large number of people did attend the sale, and that several bids were made, both for the several classes of property when offered separately, and when it was offered as a whole.
It would be unfair, unjust, and inequitable to say to a person who happens to be a stockholder or director, that under no circumstances can you agree or contract to protect your interest because such a contract would be against public policy; and neither can you bid at a judicial or public sale for the assets of the corporation because if you do you will be regarded with suspicion and with a jaundiced eye.
Fortunately a majority of the courts have adopted a more enlightened view and have made, as an exception to the general rule, the person who has an interest to protect.
The jury has determined that Dr. Berrong had a legitimate interest to protect and that he protected this interest with an agreement honestly made and honestly executed by him. There is substantial evidence in the record to support the jury’s finding.
The judgment of the lower court is, therefore, affirmed.
Affirmed.
RODGERS, PATTERSON, INZER and SMITH, JJ., concur.
ETHRIDGE, C. J., and GILLESPIE, JONES and BRADY, JJ., dissent.