# Wolon v. Welsh. No. 1

*William A. Gray*, for plaintiff.
*John R. K. Scott* and *William T. Connor*, for defendant.

STERN, P. J., October 18, 1933.—It is not necessary for the purpose of this opinion to recite the facts of the case in detail. The testimony covers 782 pages and constitutes a record of such immoralities and such lack of appreciation by both parties of the proprieties of life that it is difficult to judge which of the two is the more reprehensible.

This being the defendant's motion for judgment n. o. v., we must, in deciding it, assume the facts to be as asserted by the plaintiff. According to her story, the defendant asked her to marry him in March 1927. At that time he was a married man. Indeed his wife is still living, and there has been no divorce, so that the defendant has not at any time been able to marry the plaintiff. In March 1927 she also was married, and in answer to the defendant's proposal she told him that she could not marry him because of that fact, but she said that proceedings had been started to obtain a divorce.

The divorce was granted in June 1927, and the plaintiff says that she so informed the defendant in October of that year and that they could therefore get married. She testified that the defendant replied that that was "wonderful", but that he would have to go to Europe to settle up some of his affairs before he could get married, and he would take care of this business promptly, so that they could have an uninterrupted honeymoon when he returned. He further said that they should keep their engagement a secret. It is upon this conversation, had between the parties in October 1927, that the plaintiff relies as constituting an agreement of marriage between the parties. She says that at that time she had no inkling of the fact that the defendant was a married man, and she rests her present suit upon the principle of law that it is no defense to an action for a breach of promise of marriage that the promisor was already married at the time of making the promise, if this fact was then unknown to the promisee, and that one who enters into any forbidden contract in honest ignorance of the invalidating fact sustains to it a like relation as though the fact did not exist.

The plaintiff asserts that in December 1927 the defendant for the first time revealed to her that he had a wife living abroad, but told her that he wanted

320

her to continue to have faith in him, to continue to love him, that he was getting a divorce, and that he was about to go to Europe to make the necessary arrangements.

Under the facts thus claimed by the plaintiff, a right of action then accrued to her for breach of promise of marriage. Where a contract is impossible of performance because of the disability of one of the parties, which was unknown to the other party at the time the contract was entered into, the latter is entitled to sue as for a breach immediately upon discovering the fact.

In December 1927, therefore, or at any time thereafter within the statute of limitations, the plaintiff would have had the right to bring the present action, were there no facts in the case other than those heretofore stated. The present motion for judgment n. o. v. is based, however, on the conduct, acts, and declarations of the plaintiff after learning that the defendant was married. The plaintiff herself states that from almost the beginning of her acquaintanceship with the defendant, and more or less continually thereafter, they had maintained sexual relations, and when the plaintiff in December 1927 learned for the first time, as she says, that the defendant was a married man, she made no change in this relationship. She took extended trips with the defendant to the West Indies, to Honolulu, and around the world, and also went with him to various places in this country, and continued being his mistress for a period of almost 3 years after the revelation of December 1927. During this time, according to her story, they continued to assert their love for one another and their intention to marry as soon as the defendant could obtain a divorce. She not only admits but emphatically insists that their engagement of marriage continued between them just as before. She states that during their trip around the world in 1929, while they were in Ceylon, the defendant bought her an engagement ring which she accepted as such. In May of that year, while they were in Paris, there was a meeting at which they and the defendant's wife were present, and, according to the plaintiff's story, the wife insisted that the defendant choose between her and the plaintiff; the defendant said that he loved them both; the wife suggested that the plaintiff accept a money settlement from the defendant, but the plaintiff indignantly refused this suggestion, saying that when she had left her invalid mother in America and had come to Europe with the defendant her mother had consented to her doing so only because she knew that the plaintiff loved the defendant and was engaged to him; the plaintiff told the defendant's wife that she could not give the defendant up because she loved him.

The intimate relationship between the parties ended in 1930. In the summer of that year the plaintiff's letters to the defendant were returned unopened, and the following year the plaintiff brought this suit (originally in Court of Common Pleas No. 1) to recover damages for breach of promise of marriage.

The plaintiff is 45 years of age; the defendant is 60. The evidence plainly indicated that both parties were sophisticated and worldly-wise, and that each of them had experiences in love and marriage prior to their first meeting.

Under the circumstances thus narrated, the court is of opinion that the plaintiff, by the attitude which she assumed and the course of conduct which she adopted after December 1927, waived any rights which she may then have had to bring the present action against the defendant for breach of promise of marriage. The engagement contract made by the parties in October 1927 was against public policy, because one of the parties was then married, but nevertheless the law gave the plaintiff a right of action thereon because the parties were not in pari delicto. The defendant had deceived her, and when this fact was revealed she had the same right as that of anyone who is the victim of

another's deceit, namely, to sue for damages, and she could have stood upon that right and exercised it. But she also had the alternative of overlooking or waiving the deceit and of ratifying or affirming the engagement contract notwithstanding the misrepresentation that had been made to her, and this is what she elected to do. It is clear both from her words and acts that instead of treating the contract as broken she rested upon it as being still in force and effect. In addition to continuing her sexual relationship with the defendant, she refused, as she says, to give him up; she accepted from him an engagement ring in affirmance of the contract of marriage, and in every way acted on the theory that she was still engaged to him.

The law does not enforce an agreement to marry, or allow damages for the breach of it, if one of the parties is already married, even though such party may be expecting to obtain a divorce and be using means to that end, and the marriage is made contingent upon the obtaining of such divorce. If one of the parties does not know that the other is married, a right of action is given, not because the contract is any the less objectionable as being against public policy but because the element of fraud and deceit enters into the case, and the innocent person is therefore allowed redress. When the deceit is removed by a disclosure of the true facts, if the innocent party, instead of standing upon his or her resulting rights, chooses to reaffirm the contract, the situation reverts to what it would have been had she known at the time when the agreement was first entered into that the other party was married. In other words, we then have a case where the parties are reëntering into the agreement with full knowledge on the part of both of them that the contract is against public policy and therefore void, and the situation is then the same as if the element of deception had never been in the case at all.

In short, when the plaintiff learned in December 1927 that the defendant was married, and she said to him in effect: "Notwithstanding your having deceived me, I will not give you up; we are still engaged; I will continue our former relations just as if nothing had happened; we will confirm our engagement by the giving and the receiving of a ring"; she thereby adopted the status of a party to an agreement which she was bound to know was void, and she must now be held to that status and cannot assume a position inconsistent with it.

"A waiver exists . . . where one with full knowledge of a material fact does . . . something inconsistent with the existence of the right or of his intention to rely upon that right": 40 Cyc. 259.

"The intention [to waive] need not necessarily be proved by express declarations, but may be shown by the acts and conduct of the parties, from which an intention to waive may be reasonably inferred . . .": 40 Cyc. 263.

There is no authority in Pennsylvania which passes upon the situation involved in the present case. Counsel have cited two decisions in other jurisdictions, Coover v. Davenport, 48 Tenn. 368, and Cammerer v. Muller, 14 N. Y. Supp. 511 (affirmed 133 N. Y. 623), which apparently take a view different from that herein adopted, but they are not binding upon this court, and we do not believe that their reasoning rests upon either good law or sound morals.

The defendant's motion for judgment n. o. v. is granted. The court will not act upon the motion for a new trial until the Supreme Court, in the event of an appeal, shall have passed upon the decision now rendered.