## SUPREME COURT.

DAVID H. GOULD agt. E. B. GAGER, WM. P. LIBBY and others.

SAME agt. WM. A. WOODWARD, WILLIAM P. LIBBY and others.

SAME agt. HENRY MATHEWS, WILLIAM P. LIBBY and others.

SAME agt. ALICE C. LAWLER, WILLIAM P. LIBBY and others.

SAME agt. CLEMENT KAIN, WILLIAM P. LIBBY and others.

A *sale of mortgaged premises will be set aside* where the owner of the equity of redemption *appealed in good faith* from the judgment of foreclosure of the county court, but owing to *imperfect justifications of his sureties* in the undertakings

Gould agt. Libby.

given on the appeal, the sale was not stayed, and the plaintiff proceeded and sold the premises, without notice to the owner or return of the undertakings, bidding off the same himself or by his agent for one-third less than their real value, and taking a decree against the owner for the balance.

*Brooklyn General Term, February,* 1863.

APPEAL by plaintiff from the decision of the county court of Kings county, granting an order for a re-sale of the mortgaged premises in this case.

D. P. BARNARD and W. M. INGRAHAM, *for plaintiff*.
J. W. GILBERT, *for W. P. Libby*.

BROWN, Justice. The court will not interfere and set aside a sale under a judgment or decree of foreclosure for mere inadequacy of price. But where there has been fraud or collusion, or the parties having an interest as owners or creditors have been prevented from attending the sale by the representations of the master or referee, or by sickness or inevitable accident, then it will exercise its power and order a re-sale. In *Collier* agt. *Whipple*, (13 *Wendell*, 224,) a re-sale was granted and affirmed on appeal, upon the ground that the judgment creditors were prevented from attending the sale in consequence of impressions received by their agent, from a conversation with the master, that the sale would not take place. In *Tripp* agt. *Cook*, (24 *Wend.*, 143,) it was held that a re-sale will be ordered where the mortgaged premises have been sold below their real value, and bought in by the mortgagee, if the mortgagor or those representing his interest have been misled by the mortgagee, or even by a third person in reference to the foreclosure of the mortgage, and in consequence do not attend the sale. In *Requa* agt. *Rea*, (2 *Paige*, 339,) a re-sale was ordered, because the master, mistaking his duty, sold the premises for $1,000 to a purchaser who was aware at the time that the master had written instructions from the complainant's solicitor not to sell for less than $2,600. It was also held that the purchaser at such a sale

submits himself to the jurisdiction of the court as to all matters connected with the sale. In *Billington* agt. *Forbes and Marsh*, (10 *Paige*, 487,) a re-sale was ordered where a co-defendant of the mortgagor took advantage of the absence of the latter from illness and prevented a postponement of the sale, and then became the purchaser himself at one-third of the real value of the premises. To the same effect is the case of *May* agt. *May*, (11 *Paige*, 201.) The papers disclosed improper interference and management to prevent competition at the sale, and the chancellor ordered a re-sale upon the application of a judgment creditor who was not present when the sale was effected. (*Vide, also, Dunning* agt. *Smith*, 3 *Johns. Ch. R.*, 332 ; *Powell* agt. *Tuthill*, 3 *Comst. R.*, 396.)

The five cases in favor of David H. Gould, of which the titles are given above, were actions brought in the county court of Kings county, each to foreclose a mortgage upon premises in Brooklyn. William P. Libby was not the mortgagor in either, but he was made a party as the owner of the equity of redemption in each case. The complaints charged that he had assumed and become personally chargeable with the payment of the mortgage debts, and on that account the complaints prayed in addition to the usual relief a judgment against him personally for the deficiency. This claim was put in issue and resisted by the defendant Libby, and upon the trial, judgment was rendered against him. He thereupon appealed to the supreme court on the 1st of August, 1861. These appeals were regular in all respects, and were designed by him to operate as a stay of all the proceedings in the actions until the appeals could be heard and determined. They did not have that effect, however, in consequence solely of the affidavits of justification of the sureties to the undertakings being in the amounts stated therein, and not in double those sums, as required by the practice. The undertakings, with these imperfect affidavits of justification, were filed and served on

the 1st day of August, 1861, and on the 3d of that month the plaintiff proceeded to a sale of the mortgaged premises, Libby not being present, and without returning the undertakings or intimating to him or his attorney the defect which he must have observed. In the first named action, the property was struck off to and purchased by the plaintiff for $500. He assigned his bid to one Henry I. Powers for $1,000, and the referee conveyed the premises to Powers, the plaintiff settling with the referee for the purchase money. This was on the 6th of August. On the same day judgment was entered against Libby for the difference of $1,953.69. In October thereafter, Powers mortgaged the premises to one Philo W. Titus. The premises in the second named action were also struck off to and purchased by the plaintiff at the sale for $800. On the 5th August he also sold this bid to one Nicar for $1,000, who, on the 6th of August, took the referee's deed. Judgment in this action for $1,645.88 deficiency was also entered against Libby. In the third named action, the premises were purchased by the plaintiff at the sale for the sum of $500, for which he took the referee's deed on the 6th of August, and entered his judgment against Libby for $1,947.41, the deficiency therein. In the fourth entitled action, the premises were bid in at the sale by the plaintiff, as the agent of Edwin A. Brooks, for $500. He also settled the consideration money with the referee, and took the deed to Brooks August the 5th. Judgment in this case was entered against Libby for $1,945.88, the deficiency therein. In the fifth and last of the above entitled actions, the premises were struck off to and purchased by the attorney for the plaintiff, as agent of one Mary B. Jackson, for $600. He settled with the referee for the purchase money on the day of the sale, and took the deed to her. The deficiency in this action was $1,850.22, for which judgment was entered against Libby. Mary B. Jackson afterwards mortgaged this lot to one Cowenhoven. Four things are worthy of observation

here: 1st. Each of the five lots were bid in at the sale by the plaintiff, or by his attorney in the actions, for himself or as the agent of other persons. 2d. In each case the plaintiff or his attorney settled with the referee for the purchase money. 3d. The deeds were all executed and delivered on or before the 6th of August, within three days of the time of the sale. 4th. The entire proceeds of the sales is $2,900, and the deficiency for which judgments are entered, $9,313.08. The proof as to the value of the mortgaged premises is, as usual, conflicting; but there are two facts of some significance in this connection. Libby is the purchaser and owner of the equity of redemption, with an agreement to pay the several mortgage debts, as the plaintiff alleges. And as a part of the papers upon which the county court granted the order to re-sell, there is the offer of Libby's brother, who is thought to be of ample ability, to bid $1,500 upon each lot at the re-sale. I can hardly doubt that the property was sold at a ruinous sacrifice. The affidavits of justification were amended and corrected on the 3d of October, 1861, under an order of the county court. Libby then moved the county court for a re-sale, which was granted upon terms from which the plaintiff has appealed in each case to this court.

I arrive at the conclusion, from a perusal of the papers, that Libby intended in good faith to bring an appeal in each of these actions—an appeal which should stay the plaintiff's proceedings and arrest the further progress of the sale. It follows as a corollary to this proposition that the defect in the affidavits of justification, which rendered the appeals ineffectual to stay the sale, was an inadvertance—a mere accident, a thing which will occasionally occur in the present transition state of the practice, whatever may be the care and skill employed. The defendant Libby confided, as he certainly had a right to confide, in the efficacy of the appeal papers to stop the sale, and did not, therefore, attend or give himself any concern there-

Gould agt. Libby.

with. The defect in the papers was unknown to Libby, but it was well known to the plaintiff, and having the contract of the sale he was armed with power to work great mischief to his adversary. He was not bound under any rule of practice to return the undertakings as insufficient, and to give the owner of the property notice that the sale would proceed. The question is not so much what he was bound to do, as what he was in equity and good faith bound not to do. His only legitimate object in prosecuting the actions was to collect his money. He knew his adversary was laboring under a delusion, and that one word from him would make him aware of the peril and danger of his position. If his omission to speak that word resulted in irreparable injury to his adversary and large benefit to himself, he cannot complain if the court exerts its power to redress the injury, doing him no wrong at the same time. In *Billington* agt. *Forbes and Marsh, supra,* the mortgagor was unable to attend the sale from illness. A co-defendant interfered and prevented a postponement, and became the purchaser of the property himself at one-third of its real value, and a re-sale was ordered. In this case the owner of the property was not physically ill; he was, however, laboring under a misapprehension, a delusion, as to the sale of his property. This was well known to the plaintiff, who, notwithstanding, proceeded with the sale and bid in the property for himself and others at one-third of its real value. The two cases are not dissimilar in principle, and the one should be open to the same relief as the other. There was accident and surprise upon the one side, and advantage taken of it upon the other, and unless the court can afford relief, the loss will be irreparable. I am influenced somewhat by the haste with which the plaintiff had the conveyances executed and the sales perfected, and by the speed with which others became interested as purchasers and mortgagees. It looks like the execution of a purpose to place barriers between the owner and the relief he

now seeks. The circumstances are peculiar and unusual, certainly. The transfers and charges referred to form no insurmountable impediment to a re-sale of the property. The persons having these claims are not purchasers without notice, so as to entitle them to hold against the equities of the owner. All the lots were bid in by the plaintiff and his attorney, either for the plaintiff or the others, and notice to the agent is notice to the principal. Besides, purchasers under a judgment or decree of the court submit themselves to its jurisdiction in respect to the property purchased, and take it subject to its power to vacate the sale under proper limitations, and to promote the ends of justice.

The orders of the county court should be affirmed and modified so as to protect the purchasers at the sales and the subsequent mortgagees, and insure the application of the proceeds of any sales of the mortgaged premises, to be made hereafter, to the payment of the moneys advanced by them; and to that end the purchase money upon such sales should be held and not distributed until the further order of the court, and with leave to the parties interested to apply for further directions. The orders to be settled upon notice by the justice who delivers this opinion.