DANIEL B. WESSON, Suing for the Benefit of Himself and Other Creditors, etc., of GEORGE D. CHAPMAN, as Receiver, *v.* GEORGE D. CHAPMAN, as Receiver of the LACKAWANNA AND PITTSBURGH RAILROAD COMPANY, and Others.

In the Matter of the Claim of R. FLOYD CLARKE, as Assignee for the Benefit of Creditors of BOUDEN & JENKINS and COLLIN, BOUDEN & JENKINS, Appellant, *v.* GEORGE D. CHAPMAN, as Receiver of the LACKAWANNA AND PITTSBURGH RAILROAD COMPANY, Respondent.

*Judicial sale — inadequacy of price — offer to give a larger price — motion to set aside the sale — laches — sale subject to receiver's certificates — public interests considered.*

The mere inadequacy of price is not a sufficient ground to set aside a judicial sale of real estate, unless it be so great as to shock the conscience of the court and raise the inference of unfairness or fraud, or unless there are circumstances of mistake or surprise, and a resale will not be ordered as a general rule upon an offer to increase the price brought at the sale, without the support of some special circumstances.

Where a person knowing that real estate was to be sold by virtue of a judgment took no action whatever to have it bring any larger sum than it was sold for, and gave no attention to the matter, he is not free from the imputation of *laches* upon a motion made by him to set such sale aside.

Certificates issued by the receiver of a railroad provided that, if on a sale of the property and franchises of the company they should not produce sufficient to pay the outstanding certificates, the purchaser should assume such certificates. *Held*, that this provision did not apply to a sale under the certificates themselves.

What public interest should be considered in setting aside a sale of a railroad.

APPEAL by R. Floyd Clarke, as assignee for the benefit of creditors of Bouden & Jenkins and Collin, Bouden & Jenkins, from an order of the Supreme Court, made at the Erie County Special Term and entered in the office of the clerk of the county of Erie on the 19th day of October, 1892, confirming the referee's report of sale, and also from an order of the Supreme Court, made at the Erie County Special Term and entered in said clerk's office on the 19th day of October, 1892, denying his motion to vacate and set aside the sale had in the action, and for further relief.

The history of the railroad company in question has not been financially fortunate.

In December, 1884, the Lackawanna and Pittsburgh Railroad Company was operating a narrow gauge road from Olean to Angelica, and a standard gauge railroad from Belfast Junction to Perkinsville. It was formed by the consolidation of the Alleghany Central Railroad Company and the Lackawanna and Pittsburgh Railroad Company.

Prior to that consolidation the Alleghany Central Railroad Company issued its mortgage bonds amounting to $600,000, which were then outstanding. And the Lackawanna and Pittsburgh Railroad Company had issued its mortgage bonds to the amount of $1,600,000. After the consolidation it, by supplemental mortgage, secured the bonds. This was the situation when, in December, 1884, the People commenced suit against the company to dissolve the corporation, and Chapman was appointed receiver. By order of the court, made in January, 1885, the receiver was authorized to issue his certificates to the amount of $100,000, to become the first lien upon the Lackawanna and Pittsburgh railroad property and franchises. He issued certificates and sold ten of them of $1,000 each, $10,000, to the plaintiff Wesson. Afterwards, in February, 1886, the receiver was authorized to issue his notes to the amount of $50,000, also to be a lien prior to the mortgage bonds on the railroad property. He did issue $45,000 of notes. He ran the railroad until September, 1888. In the meantime, Barse, the holder of some of the mortgage bonds of the Alleghany Central Railroad Company, commenced an action to foreclose the mortgage (on refusal of the mortgagee to bring it). And the Mercantile Trust Company, the trustee to which the mortgage was made, commenced an action to foreclose the mortgage of the Lackawanna and Pittsburgh Railroad Company. Chapman was appointed receiver. Decrees were entered in those actions, and sales in execution of them were afterwards, and in April, 1889, made of the property and franchises of the original companies and were purchased by a committee for reorganization, which was perfected and the property conveyed to the Lackawanna and Southwestern Railroad Company. This also embraced the Rochester, Hornellsville and Pittsburgh railroad. The Lackawanna and Southwestern Railroad Company issued $800,000 bonds secured by its mortgage, of which $540,000 went to the Central

Construction Company for certain specified purposes. The construction company operated the railroad from August, 1889, to April, 1890, and the Lackawanna and Southwestern Railroad Company thereafter until in June following. The receiver's certificates and notes outstanding remained a prior lien upon what was the property of the Lackawanna and Pittsburgh Railroad Company. And the Wesson action was brought to foreclose such prior lien, and for judgment directing sale of the property to pay, with the proceeds, the certificates and notes, or so much of them *pro rata* as such proceeds would satisfy.

He recovered judgment accordingly, and on September 24, 1892, a sale pursuant to it was made to John Byrne for $15,000.

*Clarke & Culver*, for the appellant.

*William L. Marcy*, for the respondent.

Bradley, J.:

The motion to vacate or modify the judgment is founded upon the charge that it, as entered, did not afford to the holders of the receiver's certificates and notes the benefit to which they were entitled. As has been observed, the orders pursuant to which they were issued gave them priority over the mortgage bonds previously issued, and that priority continued.. This is not questioned. The certificates contained a provision that in case of a sale of the property and franchises of the railroad company by judicial proceedings or otherwise, and it should not realize sufficient to pay the full amount of the certificates then outstanding, the purchaser should assume such certificates. In each of the receiver's notes was a similar provision. No provision to that effect was in the judgment pursuant to which the sale in question was made. The decree directed that out of the proceeds of the sale the referee pay first the costs, fees and expenses of the suit, and next the receiver's certificates and notes, or so much of them as the residue of the proceeds would pay.

The orders authorizing the issue of the certificates and notes, so far as appears, did not contain any such direction, and whatever force it had was given by the certificates and notes themselves.

It probably was not contemplated when they were made that any judicial proceeding for the sale of the property would be founded

upon them, but that it might be taken for that purpose upon the mortgages, and such provision may have been put into the certificates and notes to emphasize their priority and to protect them from sacrifice in such a proceeding. In other words, that they should remain a charge upon the property against any purchaser at a judicial sale founded upon any junior lien. They were so recognized in the decrees in foreclosure, upon which sales had been made, and in the reorganization provision was made for their payment.

This action was brought by the plaintiff not only for the benefit of himself, but of all other creditors of the receiver to enforce the lien of the certificates and notes, and for the purpose of realizing for their payment such proceeds as the sale would produce. It is difficult to see that the provision for assumption of them by the purchaser is applicable to an action and sale for such purpose.

The object of the proceeding was to vest a title in the purchaser free from the lien of those instruments. It would certainly be remarkable to suppose that it was within their contemplation that a purchaser at a judicial sale to foreclose the lien of the notes and the certificates would take the property subject to, or assume them in case there was, a deficiency of proceeds to pay those obligations.

Nor is it reasonably supposable that the foreclosure of such lien could effectually be had if the property failed to produce sufficient proceeds to pay them in full. And it would not be practicable to bid in the property for all the holders of the certificates and notes, as some might not assent to take such relation to it, and if they should it might embarrass the future use of the railroad property and franchise for the most desirable purposes or for such as the public interest might require. Those are some of the reasons why the assumption provisions of those instruments do not seem applicable to a judgment in an action to foreclose the lien of them. And further, it is represented by affidavit in opposition to the motion that the appellant Clarke appeared before the referee, was advised of the complaint, the proceedings and judgment, and no question was raised in respect to the judgment. It is also quite evident from what appears in the papers that the property could not have been sold for an amount equal to that of the certificates and notes outstanding.

In the view taken the order denying motion to set aside or modify

the judgment should be affirmed. In support of the motion to set aside the sale and for a resale the appellant alleges that it was made for a price grossly inadequate and attended with circumstances of surprise. Mere inadequacy of price is not a ground for such relief unless it be so great as to shock the conscience of the court, and raise the inference of unfairness or fraud or unless there are circumstances of mistake or surprise. (*O'Donnell* v. *Lindsay*, 7 J. & S. 523; *Kellogg* v. *Howell*, 62 Barb. 280; *Gould* v. *Gager*, 18 Abb. 32; *Tripp* v. *Cook*, 26 Wend. 143; *Am. Ins. Co.* v. *Oakley*, 9 Paige, 259.)

The amount for which the sale was made appears quite small for a railroad, but it appears that most of the time of its operation it had been run at a loss; and the affidavits in opposition to the motion tend to show that its value was in the old iron and steel to be taken and sold as such.

The only offer in the moving papers to pay a larger price on resale is made in the affidavit of Mr. Post, who says he will bid and give for the property, "if the same be sold by judicial sale free and clear of all incumbrance, the sum of thirty thousand dollars." This may, therefore, be deemed the up price for which it would sell on a resale.

The general rule is such that a resale will not be ordered upon an offer to increase the price without the support of some special circumstances in aid of it. (*Lefevre* v. *Laraway*, 22 Barb. 167–173.)

The sale was advertised for September 23, 1892, at ten A. M. Shortly before that time an order made by Mr. Justice BEACH was served upon the referee in terms staying the sale until a future day, when the plaintiff was required to show cause why it should not be further stayed during the pendency of the appeal from the judgment.

The sale was held open until twelve-thirty P. M. the next day. In the meantime the order was vacated by the justice who made it for irregularity, in that it was obtained without the notice required by rule 67. And the sale was then made. The order seems to have been obtained upon application in behalf of the Central Trust Company of New York. The appellant Clarke was absent on vacation, and it does not appear that he knew anything of the order at the time it was obtained or vacated, nor does it appear that any person was deterred from being present at the sale by reason of the order,

although Mr. Clarke in his petition states his belief that persons neglected to attend the sale to bid by reason of the order and its vacation.

The offer made to bid double the amount for which the property was sold, in view of the other circumstances before referred to, has some force upon the application for a resale, and if it could be granted without prejudice would be entitled to grave consideration upon the question. It may be observed that the certificates and notes outstanding with interest at the time of the sale amounted to $151,241.49, of which the purchaser held $135,562.63, leaving only $15,678.86 held by others.

The claim of the appellant Clarke in them then amounted to $1,699.60. The costs and expenses of the action which the referee was, by the decree, directed to pay from the proceeds amounted to $7,485.43. If there should be a resale of the property for $30,000 the appellant would receive only about $160 more than he is entitled to from the proceeds of the sale already had, and it appears that the expenses of a resale would exceed that sum. In view of that fact, but little benefit would result to him from it, and the prejudice to the present purchaser as well as to the public might be considerable, as he states a purpose to have the road equipped and extended at considerable expense, and that a resale would have the effect to delay the work, and, as stated by him, he apprehends would render it difficult or practically impossible to raise the funds upon the plan already-devised to rebuild, equip and extend the railroad as is contemplated. Many of the business men on the line of the road, by affidavit, express their confidence in the persons interested in the purchase and in their purpose to put the road in operation, and that the people there will assist them in accomplishing it. There seems, therefore, a public interest which may not be entirely overlooked in view of the fact that an inconsiderable benefit only would likely result to the appellant from a resale of the property. Then he is not free from the imputation of *laches*. He, knowing that the property was to be sold by virtue of the judgment, took no action whatever, so far as appears, to seek to have it bring any larger sum than it was sold for, and in fact gave no attention to the matter.

There were several persons present at the sale and eight different bids made when the highest one was reached. The sale seems to

have been fairly conducted by the referee, and it is stated in the affidavits that the purchase was made in the name of the purchaser in good faith and for the purpose on his part and that of his associates of putting the railroad in operation. Upon all the facts as represented in the papers on which the motion was heard and to which it is deemed unnecessary to further refer, we think the disposition of it as made at Special Term was fairly justified.

The orders appealed from should be affirmed, without costs.

DWIGHT, P. J., LEWIS and HAIGHT, JJ., concurred.

Orders appealed from affirmed.