ROOSEVELT HARDWARE, Respondent, v ETHEL GREEN, Respondent. BENJAMIN TRAVITSKY, Appellant.

Second Department, February 4, 1980

APPEARANCES OF COUNSEL

*Benjamin Travitsky,* appellant *pro se.*

*Leonard S. Clark (Joseph Burden* of counsel), for respondent.

## OPINION OF THE COURT

O'CONNOR, J.

The previously undecided issue presented by this appeal is whether the stipulated vacatur of a default judgment may serve to nullify a duly consummated Sheriff's execution sale conducted to satisfy the judgment. After giving due consideration to the interests of the judgment creditor, judgment debtor, and purchaser at the Sheriff's sale, we conclude that considerations of certainty of title at judicial sales and principles of fair play serve as a bar to the use of a stipulated vacatur for such a purpose.

I

The complexities raised by this appeal find their origin in the simple purchase of a color television set by Ethel Green from Roosevelt Hardware in 1969. Mrs. Green failed to pay for the set although Harold Ruthizer, the principal of Roosevelt, alleges his timely demand for the amount due. Roosevelt proceeded to obtain a default judgment for $471.05 which was docketed on March 27, 1970. Execution was issued on February 23, 1972 to the Nassau County Sheriff. Benjamin Travitsky, the purchaser of Mrs. Green's interest in the tenancy by the entirety of the house she has resided in since 1955, alleges that he brought a notice of the Sheriff's sale to the Green house approximately two weeks prior to the sale. Finally, on June 5, 1972, Travitsky, a speculator, purchased Mrs. Green's interest in the premises for the meager sum of $475. Of this amount, only $204.51 actually went towards satisfying the outstanding default judgment.

Mrs. Green never vacated the premises. She claims that she first learned of the judgment against her and the sale of her house in 1973. No notice had ever been received with regard to either Roosevelt's action against her or the sale of the house. As the result of illness, Green failed to initiate a motion to vacate the default judgment for lack of jurisdiction until 1975. Roosevelt, in opposing the motion to vacate the judgment, argued that service had been proper and further

urged that laches precluded the granting of relief. This dispute culminated with the entry in open court of the following stipulation on December 4, 1975:

"It is hereby stipulated and agreed by and between the parties herein, and their attorneys, that the judgment of this Court entered March 13, 1970, in the civil action bearing Index #644 of '70, is vacated on the following terms and conditions:

"1. Disputed service of February 7, 1970, is hereby vacated.

"2. The default of March 13, 1970 is vacated and Defendant Ethel Green is permitted to appear in the action.

"3. The action is settled for the additional payment of $300.00 to be paid by Ethel Green at the rate of $20.00 per week for 15 consecutive weeks beginning December 12, 1975.

"4. Until such time as payment is completed, the judgment entered March 13, 1970 shall remain as security for payment."

Having successfully vacated the judgment underlying the sale of the house when the $300 required by the stipulation was paid, Green initiated the next phase of this contest on October 31, 1977 by bringing a motion to re-establish her title to the premises and declare the Travitsky Sheriff's deed void. Her order to show cause noted that the motion was pursuant to CPLR 5237, although Special Term treated it as one pursuant to CPLR 5240. Travitsky opposed the motion, arguing both laches and the unfairness of allowing a stipulation to void the title to the property obtained five years earlier. Special Term granted Green's motion, relying on the long-established principle of *McCracken v Flanagan* (141 NY 174), that a Sheriff's deed is a nullity where the underlying judgment is voided. Title to the premises was re-established with Mrs. Green and Travitsky was made whole with the remedy available to him pursuant to CPLR 5237 to recoup his initial purchase price from Roosevelt Hardware, the original judgment creditor. This appeal followed. We now reverse.

## II

It has long been an established principle that where the vitality of a judgment upon which an execution sale of real property ceases, the sale itself is rendered void and title will be restored to the debtor *(McCracken v Flanagan, supra; Schwinger v Hickok,* 53 NY 280). By providing for the recov-

ery by a third-party purchaser of his purchase price in the event that the underlying judgment is vacated, reversed, or set aside, CPLR 5237 implicitly recognizes this rule of law. This does not mean, however, that a stipulated vacatur of a judgment can act to deprive a purchaser at a Sheriff's sale of his acquisition, for a mechanistic application of *McCracken* would do violence to considerations of certainty of title, the Legislature's determination to extinguish the concept of equity of redemption, and principles of fair play.

In CPLR 5240 the Legislature has created a broad supervisory power in the judiciary to deny, limit, condition, regulate, extend, or modify the use of any enforcement procedure. The establishment of this statute was intended to prevent unreasonable annoyance and abuse in the use of the provisions of article 52 of the CPLR in enforcing judgments (see *Cook v H.R.H. Constr. Corp.*, 32 AD2d 806, 807). Even this far-reaching power to supervise enforcement procedures is not, however, without its limitations.

In *Guardian Loan Co. v Early* (47 NY2d 515) the Court of Appeals held that the language of CPLR 5240, that the court's broad supervisory power may be exercised "at any time", had applicability only prior to the execution of a Sheriff's sale in accordance with law. As stated by the court (at p 520) in reference to CPLR article 52, "it has no application after a Sheriff's sale has been carried out and the deed delivered to the purchaser". In reaching its conclusion, several of the court's observations (at p 520) are directly pertinent to the scope of *McCracken (supra)* and CPLR 5237: "Title to property has been transferred, often to a stranger to the judgment who relies on the regularity of the sale and proceeds accordingly. To permit these sales to be set aside * * * would discourage participation by third parties at judicial sales, for the title acquired at the sale would never be free from the spectre of judicial invalidation * * * Indeed, to permit CPLR 5240 to be used to set aside already completed execution sales would be tantamount to a judicial resurrection of the concept of equity of redemption—a remedy purposefully deleted from article 52 by the Legislature and one which we have no right to invoke."

These precise considerations are fully applicable to the situation here. The default judgment underlying the Sheriff's sale was vacated by stipulation, in the absence of the purchaser of the Sheriff's deed. A stipulation by consent requires the vacatur of a default judgment pursuant to CPLR 5015 (subd [b]), and the judgment may be vacated by the clerk,

without application to the court. Furthermore, as a rule, a court should not maintain an interest in the reasons for the stipulated vacatur (see Siegel, Supplementary Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, 1964-1979 Supplementary Pamphlet, CPLR 5015, p 306). In short, no substantive guidelines exist limiting a judgment creditor and judgment debtor from utilizing CPLR 5015 (subd [b]). A vacatur by stipulation does not reflect a finding that the underlying judgment has been improperly obtained. To establish some degree of certainty of title for participants at judicial sales, to avoid a resurrection of the concept of equity of redemption, and to prevent defaulting judgment debtors from manipulating title to their properties premised on the convenience and exigencies of their situation, we hold that despite the continuing viability of the rule set forth in *McCracken* (141 NY 174, *supra),* a Sheriff's deed may be voided only where the vacatur of the underlying judgment reflects an impropriety at the time the judgment is obtained. *McCracken* has no applicability where a default judgment is vacated on consent.

### III

In light of our determination, we conclude that the interests of justice require a remand of this matter for a further hearing. Mrs. Green originally sought to vacate the judgment pursuant to CPLR 5015 (subd [a], par 4), alleging lack of jurisdiction for failure to serve process. If she had prevailed on this claim, she would have established her title to the premises (see CPLR 5237; *McCracken v Flanagan, supra).* Although apparently abandoned once the stipulation was entered into, the claim of defective service would undoubtedly have been pursued had it been known at the time that the stipulated vacatur alone would be deemed inadequate to invalidate Travitsky's title to the premises. A remand is necessary so that Mrs. Green has an opportunity to renew her claim. There is no longer a judgment to vacate. Insofar as the claim of lack of jurisdiction comes within the ambit of CPLR 5015 (subd [a]), Special Term, on the remand, should be guided by the principles governing a motion under that section.[1]

---

1. Insofar as a question of laches may enter into the determination to be made, we note that mere delay alone, without actual prejudice, does not constitute laches *(Wagner v Huntington Hosp.,* 65 AD2d 771). We further note that Travitsky never evicted Mrs. Green from the premises, and she continued to meet the mortgage obligations even after Travitsky took title to the premises.

If it is determined that Roosevelt failed to serve Mrs. Green, and that laches is inapplicable, the judgment underlying the Sheriff's deed will be vacated "upon such terms as may be just" (CPLR 5015, subd [a]). The rule of *McCracken* will enable Mrs. Green to regain title to the house. Pursuant to CPLR 5237, the following will also ensue, as originally noted by Special Term (94 Misc 2d 654, 657):

"Inasmuch as the respondent, Benjamin Travitsky had paid the sum of $475 at the aborted Sheriff's sale on June 5, 1972, he is entitled to a return of said sum of money from the plaintiff with interest thereon from June 5, 1972. And, since the sum of $204.51, which was derived from the Sheriff's sale had been applied on account of the defendant's indebtedness to plaintiff, the defendant shall reimburse the plaintiff in such amount with interest from June 5, 1972. The plaintiff shall pay all charges for Sheriff's poundage, if any, pursuant to CPLR 8012 *(Jewelry Realty Corp. v Newport Assoc.,* 64 Misc 2d 409).

"Accordingly, upon payment of the sum of $204.51, with interest as aforesaid, by the defendant to the plaintiff, the execution issued and delivered to the Sheriff of Nassau County on February 23, 1972 and the deed for such real property from the Sheriff of Nassau County, as grantor, to Benjamin Travitsky, as grantee, is hereby declared to be null and void, and the title to said real property is hereby declared to be in the defendant, and the order to be entered hereon shall direct the Clerk of the County of Nassau to mark the said Sheriff's deed cancelled of record with a notation referring to said order."

It is to be noted that if defendant is successful, it would not work an unduly harsh result on Travitsky, the innocent purchaser at the Sheriff's sale. He will receive the money he paid for the property, with interest. He purchased the property aware of the vulnerability that all judgments underlying judicial sales are subject to. Many bargains may be found at such sales, and no undue discouragement of purchases at these sales will result.

---

At this point, it is also important to stress that purchasers at judicial sales are not subject to the arbitrary whims of judgment debtors who may seek to recover their properties at any time. As noted, the principles of laches may limit a judgment debtor's efforts to vacate the judgment pursuant to CPLR 5015 (subd [a]). As already discussed, *Guardian Loan Co. v Early* (47 NY2d 515, *supra),* prevents the invocation of CPLR 5240 after a judicial sale is completed. In addition, CPLR 2003 contains an express one-year limitation on claims involving an irregularity in the sale.

Should Special Term determine that the underlying judgment was properly entered because Mrs. Green received due notice of the action, its inquiry will still not be at an end. As noted in *Guardian Loan Co. v Early* (47 NY2d 515, 520-521, *supra):*

"This is not to say that a judgment debtor is without remedy once a judicial sale has taken place * * * [T]he court may exercise its inherent equitable power over a sale made pursuant to its judgment or decree to ensure that it is not made the instrument of injustice (see *Wesson v Chapman,* 76 Hun 592). * * *

"Where the judgment debtor can show not merely disparity in price, but in addition one of the categories integral to the invocation of equity as fraud, mistake or exploitive overreaching, a court of equity may grant relief [citations omitted]."

At the time the sale at issue took place, a $2,000 homestead exemption existed (CPLR 5206 [L 1969, ch 961).[2] On this record we are unable to understand why Mrs. Green's home was sold for a mere $475. This troubling matter should be fully explored upon the remand.

Accordingly, the order should be reversed, without costs, and the matter remanded to Special Term for further proceedings consistent herewith.

HOPKINS, J. P., DAMIANI and RABIN, JJ., concur.

Order of the Supreme Court, Nassau County, dated June 13, 1978, reversed, without costs or disbursements, and matter remitted to Special Term for further proceedings consistent with the opinion herein.

---

2. The exemption has subsequently been raised to $10,000 in an effort to minimize the instances where a homeowner suffers the trauma of having his home sold to satisfy a judgment (L 1977, ch 181).