400

POLISH NATIONAL ALLIANCE OF BROOKLYN, U.S.A., Respondent, v WHITE EAGLE HALL COMPANY, INC., et al., Appellants, et al., Defendants. (Action No. 1.)

WHITE EAGLE HALL COMPANY, INC., et al., Appellants, v MICHAEL HALKIAS et al., Respondents, et al., Defendant. (Action No. 2.)

HENRY SAFAY et al., Respondents, v POLISH NATIONAL ALLIANCE OF BROOKLYN, U.S.A., et al., Respondents, and WHITE EAGLE HALL CO., INC., Appellant. (Action No. 3.)

Second Department, December 30, 1983

APPEARANCES OF COUNSEL

*Hollenberg, Levin, Marlow, Solomon & Bodner* (*Howard J. Bodner* of counsel), for appellants and Henry Safay and others, respondents.

*Alexander J. Malewski* for Polish National Alliance of Brooklyn, U.S.A., respondent.

*William J. Garry, P. C.* (*Arnold J. Ludwig* of counsel), for Michael Halkias and another, respondents.

OPINION OF THE COURT

LAZER, J. P.

At issue in this attack on the validity of a foreclosure sale is the lawfulness of the bid arrangement entered into between the mortgagee and a prospective purchaser, the adequacy of the sale price, and the effect of the mortgagee's failure to join a contract vendee as a party defendant. Resolution of these questions sheds some light on the rights of those affected by mortgage foreclosure.

In February, 1976, Polish National Alliance (PNA) commenced foreclosure of its mortgage on property improved with a large catering hall and parking lot in the Prospect Heights area of Brooklyn. The amount allegedly due was $92,363.33. Despite the failure of the mortgagor, White Eagle Hall Company, to answer the complaint, PNA agreed to accept interest payments and to withhold further prosecution of the action in order to provide White Eagle with an opportunity to resolve its financial difficulties.

Although White Eagle made the interest payments pursuant to this agreement, its failure to pay the real property taxes resulted in an in rem foreclosure proceeding by the City of New York, which acquired title in February, 1981. Striving to redeem the property, PNA and White Eagle were both successful in finding purchasers for it. White Eagle contracted to sell the property to Henry Safay, Jake La Manna and Hanna Fuchs for $260,000 while PNA contracted with Michael Halkias for $190,000. Halkias and Safay (one of White Eagle's buyers) subsequently paid the $90,000 tax deficiency and thus redeemed the property.

Eleven months after commencement of the foreclosure action, PNA filed a notice of pendency against the property, but the notice expired in January of 1980 and no new notice was filed until August, 1981, the day after the in rem redemption. It was in the interim between the expiration of the original notice of pendency and the filing of the new one that White Eagle entered into its contract of sale with the Safay-La Manna-Fuchs group, which recorded the contract. When White Eagle defaulted in its interest payments, PNA resumed prosecution of the action, and in September, 1981, the referee computed the amount due as $96,057.33. Judgment of foreclosure and sale was entered on default, the notice of sale was published, and at the foreclosure sale on October 28, 1981, PNA purchased the property with a bid of $150. PNA immediately assigned its successful bid to its contract vendee, Halkias, who subsequently received delivery of the referee's deed.

Quickly moving to set the sale aside, White Eagle alleged that it had not been served with a notice of sale, that the price of $150 was grossly inadequate, and that the inadequate price was a consequence of a collusive agreement between PNA and Halkias in violation of public policy. At the same time, a separate action seeking the same relief was instituted by the White Eagle vendees who claimed that the foreclosure action was fatally defective for failure to join them as defendants and because their attorney's letter to PNA requesting information concerning the outstanding balance of the mortgage constituted a request for assignment of the mortgage that was unjustly refused. The White Eagle vendees also moved within their action to

enjoin Halkias from "dealing * * * in any manner" with the property in issue. Special Term's denial of both motions has resulted in an appeal by White Eagle but not by its vendees.

## I

■ The first of White Eagle's claims — that it was entitled to personal service of the notice of sale — is meritless because White Eagle failed to answer the complaint or appear and demand personal service of the notice of sale (see *Shaw v Russell,* 95 AD2d 977, affd 60 NY2d 922). Under such circumstances, RPAPL 231 requires nothing more than publication of the notice of sale (see *White v Magee,* 85 AD2d 858; *Snell v Timmerman,* 67 AD2d 1096). Indeed, White Eagle was not even entitled to notice of PNA's motion for a default judgment (see *Jaliz Holding Corp. v McGill,* 282 App Div 893, app dsmd 306 NY 824; *Washington Hgts. Fed. Sav. & Loan Assn. v Owens,* 5 Misc 2d 131).

White Eagle also contends, however, that the sale lacked validity because its contract vendees were not joined in the foreclosure action even though they were necessary parties. RPAPL 1311 defines the necessary parties to a mortgage foreclosure action in the following language:

"Each of the following persons, whose interest is claimed to be subject and subordinate to the plaintiff's lien, shall be made a party defendant to the action:

"1. Every person having an estate or interest in possession, or otherwise, in the property as tenant in fee, for life, by the curtesy, or for years, and every person entitled to the reversion, remainder, or inheritance of the real property, or of any interest therein or undivided share thereof, after the determination of a particular estate therein * * *

"3. Every person having any lien or incumbrance upon the real property which is claimed to be subject and subordinate to the lien of the plaintiff."

RPAPL 1311 codifies the equitable principle that persons holding title to the premises or acquiring any right to or lien on the property subsequent to the mortgage should be made defendants in the foreclosure action (see *Jacobie v Mickle,* 144 NY 237; 1 Wiltsie, Real Property Mortgage

Foreclosure [5th ed], § 330; 2A Warren's Weed, NY Law of Real Property [4th ed], "Foreclosure of Mortgage", § 7.02). The rationale for joinder of these interests derives from the underlying objective of foreclosure actions — to extinguish the rights of redemption of all those who have a subordinate interest in the property and to vest complete title in the purchaser at the judicial sale (*First Fed. Sav. & Loan Assn. v Smith,* 83 AD2d 601; *Swackhamer, Inc. v P.F.L. Constr. Corp.,* 285 App Div 841; 2 Drussel and Foran, Mortgages and Mortgage Foreclosure in NY [rev ed], § 32.1; 10 Thompson, Real Property [1957 replacement], § 5144; 4 American Law of Property, § 16.188). Notice to interested persons provides them with the opportunity to redeem prior to sale, to bid at the sale (which conceivably might increase the sale price), and to protect their interests in a possible surplus (*Citibank, N.A. v Oxford Props. & Fin.,* 688 F2d 1259, 1262, n 3; Note, Remedies of Junior Lienors Omitted from Prior Foreclosure, 88 U Pa L Rev 994; Nelson & Whitman, Real Estate Finance and Development, p 242). Necessary parties include persons with title to the premises (*Slattery v Schwannecke,* 118 NY 543), tenants (*Flushing Sav. Bank v CCN Realty Corp.,* 73 AD2d 945), and those holding subordinate liens (*Swackhamer, Inc. v P.F.L. Constr. Corp., supra*), or subordinate judgments (*Baldwin-Bellmore Fed. Sav. & Loan Assn. v Stellato,* 55 Misc 2d 1043), unless the interest in the property was obtained after the mortgagee filed a notice of pendency (RPAPL 1353, subd 3; *Westchester Fed. Sav. & Loan Assn. v H.E.W. Constr. Corp.,* 29 AD2d 670; 2A Warren's Weed, NY Law of Real Property [4th ed], "Foreclosure of Mortgage", § 7.02). Interests acquired prior to the filing of the notice of pendency but not recorded until after the notice was filed also are bound by the foreclosure judgment and sale (CPLR 6501; *Kindberg v Freeman,* 39 Hun 466, affd 109 NY 653; 5 Tiffany, Law of Real Property [3d ed], § 1534; Durfee and Fleming, Res Judicata and Recording Acts: Does a Judgment Conclude Non-Parties of Whose Interests the Plaintiff Has No Notice?, 28 Mich L Rev 811, 832).

■ Not mentioned among the subordinate interests we have listed are contract vendees whose contracts have been recorded. We conclude that such vendees are also neces-

sary parties to a foreclosure action (see *Condon v Murphy,* 34 NYS2d 390; *Ungar v Fischoff,* NYLJ, Sept. 29, 1969, p 15, col 4; *Century Enterprises v Butler,* 526 P2d 1350 [Col]; *Title Ins. & Trust Co. v Chicago Tit. Ins. Co.,* 97 Nev 523; 1 Wiltsie, Real Property Mortgage Foreclosure [5th ed], § 340; 2A Warren's Weed, NY Law of Real Property [4th ed], "Foreclosure of Mortgage", § 7.05; cf. *Scheidt v Supreme Wood-Working Co.,* 212 App Div 179 [vendee in possession]; *Titcomb v Fonda, Johnstown & Gloversville R. R. Co.,* 38 Misc 630 [vendee in possession]; contra, *Bennett v United States Land, Tit. & Legacy Co.,* 16 Ariz 138; *Brooke v Lowry Nat. Bank,* 141 Ga 493) because the execution of a contract for the purchase of real estate and the making of a part payment gives a contract vendee equitable title to the property and an equitable lien in the amount of the payment (*Elterman v Hyman,* 192 NY 113; *Williams v Haddock,* 145 NY 144; *Bean v Walker,* 95 AD2d 70; *Sloan v Pinafore Homes,* 38 AD2d 718; Ann., 82 ALR3d 1040). Since the right to redeem extends to those holding any legal or equitable interest in the property derived from the mortgagor (*Mackenna v Fidelity Trust Co.,* 184 NY 411; *Brainard v Cooper,* 10 NY 356; 3 Wiltsie, Real Property Mortgage Foreclosure [5th ed], § 1161; Osborne, Mortgages [2d ed], § 304; 4 American Law of Property, § 16.171), a contract vendee has the common-law right to redeem the mortgage prior to sale by tendering to the mortgagee the principal and interest due on the mortgage (*Noyes v Hall,* 97 US 34; *County Trust Co. v Edmil Constr. Corp.,* 203 Misc 208; *Title Ins. & Trust Co. v Chicago Tit. Ins. Co., supra;* 59 CJS, Mortgages, § 827).

We reject the contention that the filing of PNA's first notice of pendency in 1977 bound the contract vendees as if they were parties to the foreclosure action. The 1977 notice lapsed at the end of its statutory three-year duration (CPLR 6513) and it could not affect White Eagle's contract vendees who acquired their interest after the notice had expired (see *Pacific Lime v Lowenberg Corp.,* 77 AD2d 737; *Walter v State Bank,* 73 AD2d 406) and recorded that interest before the second notice of pendency was filed in August, 1981 (see CPLR 6501; *Kindberg v Freeman,* 39 Hun 466, affd 109 NY 653, *supra*). Prior to 1940, a recorded

contract was deemed to give notice only to those who saw it (*Schultz & Son v Nelson,* 256 NY 473), but since the 1940 amendment to section 294 of the Real Property Law (L 1940, ch 745) recording of a contract gives constructive notice to subsequent purchasers and encumbrancers for a period up to and including the thirtieth day after the date fixed by the contract for the conveyance of title (Real Property Law, § 294, subds 4, 5; *Corning v Lehigh Val. R.R. Co.,* 14 AD2d 156; 1940 Report of NY Law Rev Comm, pp 159-166; Note, Real Property-Recording of Executory Contracts for the Sale of Real Property, 10 Fordham L Rev 129; Curtiss, The Commission and the Law of Real Property, 40 Cornell LQ 735, 744). Here, the closing date fixed in White Eagle's contract had not yet been reached when the foreclosure sale took place.

Nevertheless, the fact that the White Eagle vendees were necessary parties to the foreclosure action does not make them indispensable parties whose absence mandates dismissal of the action (see CPLR 1001, subd [b]). The absence of a necessary party in a mortgage foreclosure action simply leaves that party's rights unaffected by the judgment of foreclosure and sale (*Matter of Comcoach Corp.,* 698 F2d 571; *Empire Sav. Bank v Towers Co.,* 54 AD2d 574; *Douglas v Kohart,* 196 App Div 84; *Home Life Ins. Co. v O'Sullivan,* 151 App Div 535; Osborne, Mortgages [2d ed], § 324, p 677; 1 Glenn, Mortgages, §§ 67.3, 86, 86.4; 3 Powell, Real Property, par 467). While the foreclosure sale may be considered void as to an omitted party (Osborne, Mortgages [2d ed], § 305A), it is nonetheless effective to vest the purchaser with the interests of the mortgagee, the named defendants and persons acquiring interests from the defendants after the notice of pendency (RPAPL 1353; *Winslow v Clark,* 47 NY 261; *Robinson v Ryan,* 25 NY 320; 4 American Law of Property, § 16.188). Thus — whatever the rights of its contract vendees who are not appellants here — White Eagle cannot nullify the foreclosure action on the basis of PNA's failure to name those vendees as parties in the foreclosure suit.

## II

One of White Eagle's further claims is that the sale was invalid because the bid price of $150 was grossly inade-

quate when measured against its vendees' agreement to purchase the property for $260,000. In exercising equity powers, a court has the discretion to set aside a judicial sale where fraud, collusion, mistake or misconduct casts suspicion on the fairness of the sale (*Guardian Loan Co. v Early,* 47 NY2d 515; *Fisher v Hersey,* 78 NY 387). "[M]ere inadequacy of price", however, is insufficient to vacate a sale, unless there are additional circumstances that warrant invocation of equity powers (*Guardian Loan Co. v Early, supra,* p 521) or unless the price is so inadequate as to shock the court's conscience (*Matter of Superintendent of Banks of State of N. Y.,* 207 NY 11; *Southold Sav. Bank v Gilligan,* 76 Misc 2d 30; *Monthar v Haralambides,* 56 Misc 2d 29). This rule rests on sound public policy criteria because in most instances the market value of the property will exceed the winning bid and to upset sales based on mere inadequacy of price would discourage bidding and unduly frustrate the rights of mortgagees to enforce their contracts (see, generally, Washburn, The Judicial and Legislative Response to Price Inadequacy in Mortgage Foreclosure Sales, 53 So Cal L Rev 843, 860).

■ The only evidence of the value of the foreclosed property in this record are the two contracts of sale, one at $260,000 and the other at $190,000. While the palpable inadequacy of $150 as a sale price for property worth between $190,000 and $260,000 scarcely requires comment, where the successful bid for a sum less than the amount due is made by a mortgagee who seeks no deficiency judgment, the law deems the bid to be the equivalent of the mortgage balance plus the sale expenses. A mortgagee, which bids in the property for less than the amount due, is not required to indulge the useless act of paying itself the amount of its bid. The rule has a sound rationale, for in the absence of a deficiency judgment proceeding (see RPAPL 1371), the consequence of the bid is to give full credit to the mortgagor for the amount of the mortgage balance plus the expenses of the sale. Since PNA never sought a deficiency judgment, its bid of $150 was tantamount to the mortgage balance plus the sale expenses and White Eagle was entitled to full credit for that sum (see, e.g., *Guardian Fed. Sav. & Loan Assn. v Horse-Hawk*

*Holding Corp.,* 72 AD2d 737; *Serial Fed. Sav. & Loan Assn. v Crescimanno,* 35 AD2d 561; *Cedrone v Warwick Fed. Sav. & Loan Assn.,* 459 A2d 944 [RI]; *Vend-a-Matic v Frankford Trust Co.,* 296 Pa Super Ct 492; *Girard Trust Bank v Castle Apts.,* 379 A2d 1144 [Del]; *Garland v Hill,* 277 Md 710; *Equitable Life Assur. Soc. v Vaughn,* 82 F2d 978). Thus the instant issue of inadequacy must be resolved by comparing the mortgage balance plus sale expenses with the actual value of the property. Since the referee computed the debt at $96,057.33 and the sale expenses were $960, PNA's bid was the equivalent of $97,017.33, and we conclude that this amount does not shock the conscience when compared to an alleged actual value of $260,000 for the property. Public policy reasons support this conclusion.

Although foreclosure sales at prices below 10% of value have consistently been held unconscionably low in this State (see, e.g., *Central Trust Co. Rochester v Alcon Developers,* 93 Misc 2d 686; *Alben Affiliates v Astoria Term.,* 34 Misc 2d 246; *Chemical Bank & Trust Co. v Schumann Assoc.,* 150 Misc 221; *Purdy v Wilkins,* 95 Misc 706) while sales at 50% or more of value have been consistently upheld (see, e.g., *Wesson v Chapman,* 76 Hun 592; *State Realty & Mtge. Co. v Villaume,* 121 App Div 793; *Southold Sav. Bank v Gilligan,* 76 Misc 2d 30, *supra*), there is no definitive rule for sale prices that range between 10% and 50% of value. The judicial inability to create a categorical percentage figure between 10% and 50% below which all sale prices are unconscionably inadequate derives in part from the vast variety of circumstances under which judicial sales take place and the substantial diversity in types of real estate.

Each case involving a judicial sale should be governed by its own peculiar facts (*Ballentyne v Smith,* 205 US 285, 290; see, also, *Morse v Shangold,* 135 NJ Eq 350) since public policy requires that the power to nullify judicial sales be exercised with caution. Creditors seeking to enforce liens should not easily be subjected to the expense and delay involved in the resale of their security nor should a successful bidder who acts in good faith be deprived of the bid simply because others have failed to bid

(*Ballentyne v Smith, supra,* p 289). While the need for fairness to the debtor militates in favor of a rule fixing a high percentage of value as a minimally acceptable sale price, as we have noted, a high percentage figure might discourage bidding, impair the stability of judicial sales and frustrate the ability of creditors to enforce their liens (Washburn, The Judicial and Legislative Response to Price Inadequacy in Mortgage Foreclosure Sales, 53 So Cal L Rev 843, 860). Property offered at a forced sale frequently produces a price "substantially less" than market value (*Guardian Loan Co. v Early,* 47 NY2d 515, 518, *supra*), a reality that has prompted commentators to criticize public sales as a poor method of obtaining true value (Durfee & Doddridge, Redemption from Foreclosure Sale — The Uniform Mortgage Act, 23 Mich L Rev 825; 1 Glenn, Mortgages, § 93; Vaughan, Reform of Mortgage Foreclosure Procedure — Possibilities Suggested by *Honeyman v. Jacobs,* 88 U Pa L Rev 957). No replacement for this method has been found, however, and the fact remains that judicial sales are of little interest to the public, and those who bid seek to buy at bargain prices (Durfee & Doddridge, Redemption from Foreclosure Sale — The Uniform Mortgage Act, 23 Mich L Rev 825, 832). For a judicial sale to be overthrown, the degree of inadequacy must be "very gross indeed" (Vaughan, Reform of Mortgage Foreclosure Procedure — Possibilities Suggested by *Honeyman v. Jacobs,* 88 U Pa L Rev 957, 964) and nullification should not occur unless the price is "fundamentally unfair" (Washburn, The Judicial and Legislative Response to Price Inadequacy in Mortgage Foreclosure Sales, 53 So Cal L Rev 843, 851).

While the specific sale at issue only realized 37% of alleged market value of the property, sales involving similarly disproportionate percentages have been sustained in this and other jurisdictions (see, e.g., *Weir v United States,* 339 F2d 82 [30%]; *Magnolia Springs Apts. v United States,* 323 F2d 726 [34%]; *Crofoot v Tarman,* 147 Cal App 2d 443 [40%]; *Matter of Bachner,* 82 Misc 2d 107 [41%]; see, also, Stanley, The Effect of Economic Depression Upon Foreclosure, 27 Ky LJ 365, 382-383, suggesting one third as an appropriate guideline). Here, the property was of a specialized nature and likely of limited interest to those inclined

to bid at forced sales. The sale was duly advertised and — apart from the presently contested collusion issue — there is no evidence of any irregularity that would have inhibited the attendance of other prospective bidders. In view of the public policy considerations we have discussed, on the record before us, the sale of this catering hall at 37% of value is not unconscionably low and we find no abuse of discretion in Special Term's refusal to vacate the sale on the basis of gross inadequacy of price.

## III

Although we have rejected the claims of nonjoinder and inadequacy of price as a basis for vacatur of the foreclosure sale, there may be merit to White Eagle's final claim that the sale should be set aside as violative of public policy because PNA made a collusive agreement with Halkias to suppress bidding. The essence of a judicial sale is a full and free opportunity for bidders to compete, and any agreement that unfairly restricts that opportunity is contrary to public policy (*Manhattan Taxi Serv. Corp. v Checker Cab Mfg. Corp.*, 253 NY 455). At early common law, all agreements not to bid at judicial sales were condemned, but we have come to recognize that such an agreement may be valid if made for an honest purpose such as protecting an existing interest in property or to enable individuals to bid as a group when they would have been unable to do so individually (see *Hopkins v Ensign,* 122 NY 144; *Delisi v Ficarrotta,* 76 Misc 488; 47 Am Jur 2d, Judicial Sales, § 149). While such an agreement may incidentally diminish competition, its lawful purposes override its negative effects. Thus, if a mortgagee agrees not to bid on condition that a prospective bidder will satisfy the debt if successful in bidding, the agreement is valid because the mortgagee would not be expected to bid in excess of the mortgage balance in any event (*Delisi v Ficarrotta, supra; Alvernes v Small Business Admin.,* 470 F2d 954). On the other hand, if neither party to the agreement has any existing interest in the property, it is unlawful for a prospective bidder to give consideration to induce another person to refrain from bidding (see *Fitzpatrick v Federer,* 315 SW2d 826 [Mo]; *Conran v White & Bollard,* 24 Wn 2d 619; *Goldsby v Juricek,* 403 P2d 454 [Okla]; 47 Am Jur 2d, Judicial Sales, § 150), for in that case

(

money that might ordinarily have served to increase the bid price is diverted to a third party at the expense of the mortgagor.

■ When the principles we have enunciated are applied to this case, the consideration Halkias paid to PNA for the assignment of its bid becomes a matter of prime importance in determining whether the sale must be set aside. Although it might be inferred from the record that the $190,000 contract of sale between Halkias and PNA was the consideration for the assignment of bid, the assignment instrument itself does not disclose its consideration, and the parties' arguments do not address the question. If the consideration for the assignment was no greater than the amount of the foreclosure judgment, the assignment agreement was valid because it represented a purchase of the mortgage. Therefore, in the absence of a deficiency claim by the mortgagee, the mortgagor has no basis for complaint (see *Alvernes v Small Business Admin., supra*), for the agreement deprived it of nothing more than a bid equal to the mortgage. But if the consideration for the assignment was Halkias' contract to pay $190,000 for the property, PNA received a bonus in excess of the sum due on the mortgage and the agreement diverted surplus moneys from the bid price in contravention of public policy (see *Tibbals v Graham,* 50 Wyo 277; cf. *Alvernes v Small Business Admin., supra; Hopkins v Ensign,* 122 NY 144, *supra*). While a mortgagee can protect its interest in property by entering into a presale agreement with a prospective bidder to pay off the mortgage, it cannot enter into an agreement to benefit itself in excess of the judgment due at the expense of the mortgagor. Therefore, the issue of the consideration for the assignment must be the subject of an evidentiary hearing.

We are well aware that such a hearing may not resolve all the issues that exist between those who assert interests in the property. Nevertheless, limited as we are to disposition of the specific issues before us, we reverse the order insofar as appealed from and remit the matter to Special Term for a hearing concerning the terms of the bid assignment and for a further determination as to the validity of the sale based on the findings derived from that hearing.

MANGANO, THOMPSON and GULOTTA, JJ., concur.

Order of the Supreme Court, Kings County, entered March 15, 1982, reversed, insofar as appealed from, without costs or disbursements, and matter remitted to Special Term for a hearing in accordance with the opinion herewith.